THE PEOPLE OF THE STATE OF NEW YORK, Appellant and Respondent, *v.* JOHN O'BRIEN, as Receiver, etc., et al., Appellants and Respondents.

*It seems* that, while, by the incorporation of a company under the act of 1884 (Chap. 252, Laws of 1884), providing for the organization of street railroad companies, it is endowed with capacity to acquire and hold such rights and property, real and personal, as are necessary to enable it to transact the business for which it was created, and is allowed to mortgage its franchise as security for loans made to it, it has no present right or authority to construct or operate a railroad upon the streets of any municipality.

This right it may acquire by purchase, but it can only be acquired from the city authorities, who can grant or refuse it at their pleasure, and may grant their consent upon such terms and conditions as they choose to impose.

The B. S. R. Co., a corporation organized under said act, obtained, by resolution of the common council of the city of New York, authority to lay tracks and run cars over Broadway in said city, upon certain terms and conditions prescribed in the resolution, but with no limitation as to time, or power of revocation reserved. The company duly accepted the grant, and fully complied with and performed all of said terms and conditions. It mortgaged its property and franchises as security for contemplated loans, and authorized its bonds, secured by said mortgage, to be sold, and they were purchased by investors without notice of any defect in their origin or execution; it also made traffic contracts with other roads. Thereafter it was dissolved by statute (Chap. 268, Laws of 1886). *Held,* that while the annulling act was constitutional and valid, its effect was only to take the life of the corporation; that the corporation took, through its grant from the city, an indefeasible title in the land, necessary to enable it to construct and maintain a

| 111 | 1 |
| 112 | 21 |
| 112 | 74 |
| 111 | 1 |
| 113 | 317 |
| 111 | 2 |
| 116 | 182 |
| 111 | 1 |
| 122 | 214 |
| 111 | 1 |
| 128 | 520 |
| 129 | 112 |
| 111 | 1 |
| 134 | 165 |
| 111 | 1 |
| 135 | 408 |
| 111 | 1 |
| 139 | 26 |
| 111 | 1 |
| 140 | 307 |
| 111 | 1 |
| 143 | 616 |
| 111 | 1 |
| 153 | 532 |
| 111 | 1 |
| 155 | 82 |
| 111 | 1 |
| 157 | 459 |
| 157 | 463 |
| 157 | 477 |
| 111 | 1 |
| f 161 | 167 |
| 111 | 1 |
| f 163 | 232 |
| 111 | 1 |
| f 165 | 280 |

street railway in Broadway and to run cars thereon, which constituted property; that all its property, including street rights or franchises, also its mortgages and valid contracts, including the traffic contracts, survived its dissolution; that upon such dissolution its trustees, then in office, became vested with the title to its property under the provisions of the Revised Statutes (1 R. S. 601, §§ 9, 10), as trustees for its creditors and stockholders; that the acts of 1886 (Chap. 271, and chap. 310, Laws of 1886), providing, in case of such a dissolution, for the taking away from the company of its street franchises, and for the winding up of its affairs by suit brought by the attorney-general, and the appointment of a receiver therein, are unconstitutional and void.

Although such a corporation be created for a limited period, it may acquire title in fee to property necessary for its use; and where the grant to it of the franchise to construct and operate its road in a city street is not, by its terms, limited and revocable, the grant is in fee, vesting the grantee with an interest in the street in perpetuity to the extent necessary for a street railroad; the rights granted to be exercised by the corporation or whomsoever may lawfully succeed to them.

The statutes and authorities showing that such franchises are invested with the character of property, and are transferable as such, independent of the life of the original corporation, collated.

The tracks of a railroad company and the franchise of maintaining and operating its road in a public street are inseparable.

Constitutional or statutory provisions for the repeal of statutes, providing for the creation of corporations, or the annullment of charters of corporations, do not confer power to take away or destroy property or annul contracts, and an express reservation in such a statute of power to take away or destroy property lawfully acquired, under authority conferred by a charter, and any legislation which authorizes such a result to be accomplished indirectly is unconstitutional and void.

The provision of the General Railroad Act (§ 48, chap. 140, Laws of 1850), providing that the legislature may annul or dissolve any corporation formed under the act, "but such dissolution shall not take away or impair any remedy given against any such corporation * * * for any liability which shall have been previously incurred," creates the contract between the state and the corporation, and regulates the rights of parties upon the exercise by the state of the power of repeal.

*Greenwood* v. *Freight Co.* (105 U. S. 13) ; *People* v. *Globe M. L. Ins. Co.* (91 N. Y. 174) ; *E. & N. E. R. R. Co.* v. *Casey* (26 Penn. St. 287, 301) distinguished.

The proviso in said act of 1884 (§ 15), declaring that the authorization therein contained to companies formed under it, to lease or transfer to other companies their rights to run upon any portion of their tracks, shall not be construed to authorize any company to lease its rights or franchises" to any other company owning or operating a road parallel thereto, was intended to avoid the monopoly of parallel lines, and to pre-

vent the acquisition by one company of the exclusive possession and con-
trol of such lines; it does not, where the lines of two companies are paral-
lel for a portion of their routes, preclude such companies from making
traffic contracts for the partial use of their respective routes beyond the
line of parallelism.

The provision of the act of 1839 (Chap. 218, Laws of 1839), authorizing
such contracts, is not repealed by said proviso in the act of 1884.

As to whether an action by the attorney-general in the name of the People of
the state, for the purpose of determining the rights and liabilities of parties,
as affected by the dissolution of a corporation, is maintainable, *quære.*

*People* v. *O'Brien* (45 Hun, 519) reversed.

(Argued March 5, 1888; decided November 27, 1888.)

THESE are cross appeals from a judgment of the General
Term of the Supreme Court in the third judicial department,
entered upon an order made at the October Term, 1887, which
affirmed a judgment entered upon a decision of the court on
trial at General Term.

This action was brought by the attorney-general, in the
name of the People, against John O'Brien, as Receiver of
the Broadway Surface Railroad Company; the Mayor,
etc., of the city of New York; the Broadway and Seventh
Avenue Railroad Company; the Twenty-third Street Railway
Company; William H. Hayes, Francis A. Palmer, as trustees
under certain mortgages executed by said Broadway Surface
Railroad Company, also the president and trustees of said com-
pany at the time of its dissolution, and various other persons.

The nature of the action and the material facts are stated in
the opinion.

*Charles F. Tabor,* attorney-general, and *William A. Poste*
for the People. The People have a right to maintain this
action. (Laws of 1886, chap. 310.) In construing a remedial
statute, which has for its end the promotion of important
beneficial public objects, a liberal construction is to be given
when it can be done without doing violence to its terms.
(*Wolcott* v. *Pond,* 19 Conn. 597; Potter's Dwarris, 203, 204,
231, notes; *Weed* v. *Tucker,* 19 N. Y. 422.) This suit falls
within the scope of the jurisdiction of equity, and the statute,
both directly and by implication, indicates the procedure

whereby the powers of equity may be invoked in regard to the affairs of the dissolved corporation. (*Curran* v. *Arkansas*, 15 How. 312; *Lathrop* v. *Stedman*, 42 Conn. 583, 599; *Parker* v. *Browning*, 8 Paige, 388, 390; 40 Hun, 34; *People* v. *O'Brien*, 103 N. Y. 657.) The statute annulling the charter of the Broadway Surface Railroad is constitutional and valid. (*People* v. *Lacombe*, 99 N. Y. 43; *People* v. *Flagg*, 46 id. 401; *People* v. *Comstock*, 78 id. 356; *Smith* v. *People*, 47 id. 330; *Miller* v. *State*, 15 Wall. 478; *People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 N. Y. 569; *Erie* v. *Casey*, 26 Penn. St. 301; *Penn. College Cases*, 13 Wall. 190; *McLaren* v. *Pennington*, 1 Paige, 101; *Miners' Bk.* v. *United States*, 1 Green [Iowa], 553; *Crease* v. *Babcock*, 23 Pick. 335; *Lathrop* v. *Stedman*, 13 Blatch. 134; *Greenwood* v. *Freight Co.*, 105 U. S. 17; *State* v. *Curran*, 12 Ark. 321; *Fletcher* v. *Peck*, 6 Cranch, 88; *De Camp* v. *Eveland*, 19 Barb. 81; *Rumsey* v. *People*, 19 N. Y. 41; *Railroad Co.* v. *Maine*, 96 U. S. 499; *Sinking Fund Cases*, 99 id. 700; *Railroad Co.* v. *Georgia*, 98 id. 359.) The appointment of the receiver was regularly made and is valid. (*Tomlinson* v. *Bullock*, 4 Law Rep. [Q. B. D.] 230; *Lapeyre* v. *United States*, 17 Wall. 191, 198; *Mallory* v. *Hiles*, 4 Metc. [Ky.] 53; *In re Wehnan*, 20 Vt. 654; *Krom* v. *Levy*, 60 N. Y. 126; *Marvin* v. *Marvin*, 75 id. 240; *Burgess* v. *Salmon*, 97 U. S. 381; *Arnold* v. *United States*, 9 Cranch, 104; *Richardson's Case*, 2 Story, 571; *United States* v. *Norton*, 97 U. S. 164; *People* v. *Clark*, 1 Cal. 406; *Kennedy* v. *Palmer*, 6 Gray, 316; *Blydenburg* v. *Cotheal*, 4 N. Y. 418; *Small* v. *McChesney*, 3 Cow. 19; *Clute* v. *Clute*, 3 Denio, 263; *Rogers* v. *Beach*, 18 Wend. 533; *Bellasis* v. *Hester*, 1 Ld. Ray. 281; *Field* v. *Jones*, 9 East, 154; note in 26 Amer. Dec. 234.) The tenure and duration of franchises granted by the state to a corporation is clearly for the period of its corporate existence and no longer, and they expire at the end of that period unless renewed. They cannot be extended for a longer period by a mortgage or lease to another person or corporation. They also expire whenever the legislature, before the termination of the twenty

Statement of case.

years, elects to exercise the reserved right of repeal. (Senate Documents, 1832, No. 8, Opinions of the Attorneys-General, p. 42 ; *In re Orville Lee's Bk.*, 21 N. Y. 9 ; *In re Reciprocity Bk.*, 22 id. 9 ; *Erie* v. *Casey*, 26 Penn. St. 287 ; *Tomlinson* v. *Jessup*, 15 Wall. 454 ; *Railroad Co.* v. *Maine*, 96 U. S. 63.) Where the legislature or the state terminates the existence of a corporation, its contracts cease. (*People* v. *Globe Ins. Co.*, 91 N. Y. 174, 179, 180 ; *People* v. *A. & V. R. R. Co.*, 77 id. 232 ; *Jones* v. *Judd*, 4 id. 411 ; *Heine* v. *Meyer*, 61 id. 171 ; *Brooklyn S. T. Co.* v. *City of Brooklyn*, 78 id. 524 ; *Railroad* v. *Georgia*, 98 U. S. 359 ; *Shields* v. *Ohio*, 95 id. 319 ; *Greenwood* v. *Freight Co.*, 105 id. 13 ; 1 Black. Com. 484.) The franchise is a privilege conferred by grant from the government or sovereign power and is vested in individuals or corporations. (3 Kent's Com. 458 ; 2 Bl. Com. 37 ; *Danville* v. *Comm.*, 73 Penn. St. 38 ; *In re Thirty-fourth St. R. R. Co.*, 102 N. Y. 343.) While the fee of the streets of the city of New York was in the city, such title was held only in trust for the benefit of the People, and the trust was subject to the unqualified control of the legislature. (*People* v. *Kerr*, 27 N. Y. 188.) Although the fee of the streets may be in the municipal corporation, the city has no power to make a grant in perpetuity for the use of those streets to any railroad corporation. (*People* v. *Sturtevant*, 9 N. Y. 263 ; *Davis* v. *Mayor, etc.*, 14 id. 506 ; *Milhau* v. *Sharp*, 27 id. 611 ; *Mayor, etc.*, v. *Second Ave. R. R. Co.* 32 id. 261.) The franchise granted by the state to operate a railroad in Broadway, and which was to terminate upon the death of the company, can not be augmented or extended by the power to mortgage the same. (*B. S. T. Co.* v. *Brooklyn*, 78 N. Y. 524 ; 26 Penn. St. 301 ; *Mumma* v. *Potomac*, 8 Peters, 281 ; *Railroad* v. *Georgia*, 98 U. S. 359 ; *Worcester* v. *N. & W. R. R. Co.*, 109 Mass. 103 ; *N. Y. P. & O. R. R. Co.*, v. *Parmalee*, 15 W'kly Law Bul. 239 ; *W. W. R. R. Co.* v. *Board*, 35 Wis. 271 ; affirmed, 93 U. S. 595 ; *Stillman* v. *F. O. & C. R. R. Co.*, 27 Gratt. 119.) The mortgages and leases were given subject to the law and the determinate character of the franchises. The

liability to terminate them at the pleasure of the legislature was part of the contract. (*Mumma* v. *Potomac Co.*, 8 Peters, 286; *People* v. *Globe Ins. Co.*, 91 N. Y. 179; *N. R. R. Co.* v. *Miller*, 10 Barb. 282; *Read* v. *Frankfort Bk.*, 23 Me. 320; *C. B. & Q. R. R. Co.* v. *Iowa*, 94 U. S. 155; *Peik* v. *Chicago & N. W. R. Co.*, 94 id. 164; 6 Bis. 131; *People* v. *A. & Vt. R. R. Co.*, 77 N. Y. 232.) The grant of a perpetual and indefeasible franchise to make use for private profit of the public highways of the state being inconsistent with legislative control of the streets is legally impossible. The power of the state to control the streets is for the public benefit, and, therefore, inalienable. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 484; *People ex rel. Bristol* v. *Supervisors*, 20 Mich. 95; *People* v. *Kerr*, 27 N. Y. 188; *Goszler* v. *Georgetown*, 6 Wheat. 593; *Town of East Hartford* v. *Hartford Bridge Co.*, 10 How. [U. S.] 511; *Clark* v. *Corporation of Washington*, 12 Wheat. 54.) Even if it were within the legislative power to create an indefeasible and perpetual street railway franchise in lower Broadway, it is not to be supposed, in the absence of such declaration, that such a franchise was intended. (*People* v. *Kerr*, 27 N. Y., 188 ) The reserved right to repeal corporate charters, construed with respect to street railroad corporations, includes the power to abrogate or withdraw a franchise held by such corporations to use the public streets for private gain. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 644; *Tracy* v. *T. & B. R. R. Co.*, 38 N. Y. 433, 437; Dwar. on Stat., 690; *Slaughter-house Cases*, 16 Wall. 36, 81; *Mumma* v. *Potomac Co.*, 8 Peters, 281; *Greenwood* v. *Freight Co.*, 105 U. S. 13; *Turnpike Co.* v. *Illinois*, 96 id. 63; *Chicago* v. *Iowa*, 94 id. 155; *Peik* v. *Chicago*, Id. 164; *Erie R. Co.* v. *Casey*, 26 Penn. St. 257; *Ruggles* v. *Illinois*, 108 U. S. 527; *Fanning* v. *Osborne*, 102 N. Y. 441.) When the state withdrew the franchise to operate a railroad in Broadway, and to charge fares to the public, from the mortgagor, it also, by the same act, withdrew them from the mortgagee. (*Savings Bk. Cases*, 84 N. Y. 403; *Cagwin* v. *Town of Hancock*, Id. 532; *Town of Lyons* v. *Chamberlain,*

89 id. 578; *Chicago L. Ins. Co.* v. *Needles,* 113 U. S. 574; *Craig* v. *Town of Andres,* 93 N. Y. 405; *Thompson* v. *Town of Mamakating,* 37 Hun, 400; *Bk. of Chenango* v. *Brown,* 26 N. Y. 467; *Heckman* v. *Pinckney,* 81 id. 211; *People* v. *Gold and Stock Co.,* 98 id. 67; *Turnpike Co.* v. *Illinois,* 96 U. S. 63 ) When the state withdrew the privilege of operating a railroad in Broadway, from the corporation on which it was conferred, by annulling its charter, the same act terminated the right of any other corporation to use or enjoy the franchise under lease or contract from the Broadway Company. *(Penn. R. R. Co.* v. *St. Louis R. R. Co.,* 118 U. S. 290; *Abbott* v. *Johnstown G. & K. Horse R. R. Co.,* 80 N. Y. 27; *Thomas* v. *R. R. Co.,* 101 U. S. 71; *Pierson* v. *McCurdy,* 33 Hun, 521, 522, 523 ; 100 N. Y. 608; *Peik* v. *Chicago,* 4 Otto, 164; *Chicago* v. *Iowa,* id. 155 ; *N. O. Co.* v. *Delamore,* 114 U. S. 501 ; *Fanning* v. *Osborne,* 102 N. Y. 441 ; *East Ala. Co.* v. *Doe ex dem. Visscher,* 114 U. S. 341.) The leases were void in their inception for want of power to make them, in the lessor or lessees. *(T. & B. Co.* v. *B. H. T. & W. Co.,* 86 N. Y. 107; *Abbott* v. *Johnstown, etc., R. R. Co.,* 80 id. 27; *People* v. *Albany & V R. R. Co.,* 77 id. 232; *Thomas* v. *R. R. Co.,* 101 U. S. 71; *Penn. Co.* v. *St. Louis Co.,* 118 id. 290 ; *Heckman* v. *Pickney,* 81 N. Y. 211; *People* v. *G. S. T. Co.,* 98 id. 67; *Fischer* v. *R. R. Co.,* 46 id. 644; *Central Co.* v. *Twenty-third St. R. R. Co.,* 54 How. Pr. 168; *Woodruff* v. *Erie Co.,* 93 N. Y. 609 ; *Excelsior Co.* v. *Lacey,* 63 id. 422.) No special law applicable to the Twenty-third Street Railroad Company confers a franchise upon it to operate a railroad in Broadway. *(People* v. *B. H. T. & W. R. Co.,* 12 Abb. N. C. 230.) No corporation can absolve itself of its public uses. Any act by which it undertakes to do so is unlawful, and a violation of its charter. *(Thomas* v. *R. R. Co.,* 101 U. S. 71, 78.) An agreement to practically surrender the uses of a corporation to another is an attempt at unlawful consolidation. *(Pierson* v. *McCurdy,* 33 Hun, 521, 523; affirmed, 100 N. Y. 608.) Both the people and the receiver have a right in this action to raise the ques-

tion as to the validity of the leases or traffic contracts. (*Gillett* v. *Moody*, 3 Coms. 479 ; *Talmadge* v. *Pell*, 3 Seld. 328 ; *Atty-Gen.* v. *Mut. L. Ins. Co.*, 77 N. Y. 272, 275 ; *Leavitt* v. *Palmer*, 3 Coms. 19 ; *Curtis* v. *Leavitt*, 15 N. Y. 43, 44, 45 ; Laws of 1858, chap. 314.) Chapter 310 of the Laws of 1886, providing a method of procedure for winding up the affairs of the Broadway Surface Railroad Company, which was dissolved by chapter 268 of the Laws of the same year, is a constitutional statute in all its parts. Notwithstanding the fact that it became a law some days after the company was dissolved, it was intended to apply, and does apply, to the winding up of the affairs of the Broadway Surface Company. (*People ex rel. F. Ins. Co.* v. *Davenport*, 91 N. Y. 574 ; *Ayers* v. *Lawrence*, 59 id. 192–196 ; *People ex rel. Cook* v. *Wood*, 71 id. 371–374 ; 1 Bl. Com., 86 Esp. Pen. Act 1 ; 1 Kent's Com. 455 ; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225–233 ; *People* v. *Supervisors*, 43 id. 130, 132 ; *Donaldson* v. *Wood*, 22 Wend. 395 ; 1 Bacon's Ab. Stat. 5 ; *Smith* v. *People*, 47 N. Y. 330 ; *U. S.* v. *Freeman*, 3 How. [U. S.] 556 ; *People ex rel.* v. *Supervisors*, 70 N. Y. 228–236 ; *Brower* v. *Brower*, 1 Abb. Ct. App. Dec. 214 ; Potter's Dwarris [Postnote Case], 237 ; *Campbell* v. *Evans*, 45 N. Y. 356 ; *Sands* v. *Kimbark*, 27 id. 147 ; 3 R. S. [Banks' 7th ed.] 470, § 73 ; Id. 2400, § 73 ; *Scott* v. *Williams*, 23 How. Pr. 393 ; *In re Crook*, 23 Hun, 696 ; *Wynehamer* v. *People*, 13 N. Y. 378–442 ; *Commonwealth* v. *Ketchings*, 5 Gray, 486.) The receiver and not the directors of the dissolved corporation is entitled to wind up the affairs of such corporation. (*Lathrop* v. *Stedman*, 13 Blatch. 134–150.)

*Denis O'Brien* for the receiver. The People have a right to maintain this action. (Laws of 1886, chap. 310.) In construing a remedial statute, which has for its end the promotion of important beneficial public objects, a liberal construction is to be given when it can be done without doing violence to its terms. (*Wolcott* v. *Pond*, 19 Conn. 597 ; Potter's Dwarris, 203, 204, 231, notes ; *Weed* v. *Tucker*, 19 N. Y. 422.) The suit falls within the scope of the jurisdiction of equity, and

the statute, both directly and by implication, indicates the procedure whereby the powers of equity may be invoked in regard to the affairs of the dissolved corporation. (*Curran* v. *Arkansas*, 15 How. 312; *Lathrop* v. *Stedman*, 42 Conn. 583, 599; *Parker* v. *Browning*, 8 Paige, 388, 390; 40 Hun, 34; *People* v. *O'Brien*, 103 N. Y. 657.) The statute annulling the charter of the Broadway Surface Railroad is constitutional and valid. The legislature is the sole judge of the propriety of such repeal, and its discretion therein may not be reviewed. (1 R. S., tit. 3, chap. 18, § 8; *People* v. *Lacombe*, 99 N. Y. 43; *People* v. *Flagg*, 46 id. 401; *People* v. *Comstock*, 78 id. 356; *Smith* v. *People*, 47 id. 330; *Erie* v. *Casey*, 26 Penn. St. 301; *Penn. College Cases*, 13 Wall. 190; *McLaren* v. *Pennington*, 1 Paige, 101; *Miners' Bank* v. *United States*, 1 Greene [Iowa], 553; *Crease* v. *Babcock*, 23 Pick. 335; *Lathrop* v. *Stedman*, 13 Blatchf. 134; *Greenwood* v. *Freight Co.*, 105 U. S. 17; *State* v. *Curran*, 12 Ark. 321; *Fletcher* v. *Peck*, 6 Cranch, 88; *De Camp* v. *Eveland*, 19 Barb. 81; *Rumsey* v. *People*, 19 N. Y. 41; *R. R. Co.* v. *Maine*, 96 U. S. 499; *Sinking Fund Cases*, 99 id. 700; *R. R. Co.* v. *Georgia*, 98 id. 359.) With regard to the time at which a statute takes effect, no divisions of a day are allowable; a statute goes into effect from the first moment of the day on which it receives the executive sanction, unless some other day is specified therein or by general statute for its taking effect. (*Tomlinson* v. *Bullock*, 4 Law Rep. [Q. B. D.] 230; *Lapeyre* v. *United States*, 17 Wall. 191, 198; *Mallory* v. *Heles*, 4 Metc. [Ky.] 53; *In re Welman*, 20 Vt. 654; *Krone* v. *Levy*, 60 N. Y. 126; *Marvin* v. *Marvin*, 75 id. 240; *Burgess* v. *Salmon*, 97 U. S. 381; *Arnold* v. *United States*, 9 Cranch, 104; *Richardson's Case*, 2 Story, 571; *United States* v. *Norton*, 97 U. S. 164; *People* v. *Clark*, 1 Cal. 406; *Kennedy* v. *Palmer*, 6 Gray, 316; *Blydenburg* v. *Cotheal*, 4 N. Y. 418; *Small* v. *McChesney*, 3 Cow. 19; *Clute* v. *Clute*, 3 Denio, 263; *Rogers* v. *Beach*, 18 Wend. 533; *Bellassis* v. *Hester*, 1 Ld. Ray. 281; *Field* v. *Jones*, 9 East, 154; Note in 26 Am. Dec. 234.) The

repeal or alteration of an act creating a corporation does not, in any proper sense of the term, interfere with vested rights or impair the obligations of the contract between the state and the persons on whom the franchise was conferred. (Sen. Doc., 1882, No. 8, Opins. cf the Atty's-Gen. 42 ; *In re Orville Lee's Bank*, 21 N. Y. 9 ; *In re Reciprocity Bank*, 22 id. 9 ; *Erie* v. *Casey*, 26 Penn. St. 287 ; *Tomlinson* v. *Jessup*, 15 Wall. 454 ; *Turnpike Co.* v. *Illinois*, 96 id. 63.) Where the legislature or the state terminates the existence of a corporation, its con-tracts cease. (*People* v. *Globe Ins. Co.*, 91 N. Y. 174, 179, 180 ; *People* v. *A. & V. R. R. Co.*, 77 id. 232; *Jones* v. *Judd*, 4 id. 411 ; *Heine* v. *Meyer*, 61 id. 171 ; *B. S. T. Co.* v. *City of Brooklyn*, 78 id. 524; *R. R. Co.* v. *Georgia*, 98 U. S. 359 ; *Shields* v. *Ohio*, 95 id. 319 ; *Greenwood* v. *Freight Co.*, 105 id. 13 ; 1 Bl. Com. 484.) The franchise to construct and operate a railroad in Broadway, and to take tolls from the pub-lic, was the gift of the state, and not the result of any contract with the city or the property owners. (3 Kent's Com. 458 ; 2 Bl. Com. 37; *Danville* v. *Comm.*, 73 Penn. St. 38 ; *In re Thirty-fourth St. R. R. Co.*, 102 N. Y. 343; *People* v. *Kerr*, 27 id. 188; *People* v. *Sturtevant*, 9 id. 263 ; *Davis* v. *Mayor, etc.*, 14 id. 506 ; *Milhau* v. *Sharp*, 27 id. 611 ; *Mayor, etc.*, v. *Second Ave. R. R. Co.*, 32 id. 261.) The franchise granted by the state to operate a railroad in Broadway, and which was to terminate upon the death of the company, cannot be augmented or extended by the power to mortgage the same. (*B. S. T. Co.* v. *Brooklyn*, 78 N. Y. 524; 26 Penn. St. 301; *R. R. Co.* v. *Georgia*, 98 U. S. 359; *Worcester* v. *N. & W. R. R. Co.*, 109 Mass. 103 ; *N. Y., P. & O. R. R. Co.* v. *Parmelee*, 15 Week. Law Bul. 239; *W. W. R. R. Co.* v. *Board*, 35 Wis. 271 ; affirmed, 93 U. S. 595; *Silliman* v. *F. O. & C. R. R. Co.*, 27 Gratt. 119.) The mortgages and leases were given subject to the law and the determinate character of the franchises. The liability to terminate them at the pleasure of the legislature. was part of the contract. (*Mumma* v. *Potomac Co.*, 8 Pet. 286; *People* v. *Globe Ins. Co.*, 91 N. Y. 179 ; *N. R. R. Co.* v. *Miller*, 10 Barb. 282; *Read* v. *Frankfort Bank*, 23 Me.

320; *C., B. & Q. R. R. Co.* v. *Iowa*, 94 U. S. 155; *Peik* v. *C. & N. W. R. Co.*, 94 id. 164; *People* v. *A. & V. R. R. Co.*, 77 N. Y. 232.) The grant of a perpetual and indefeasible franchise to make use for private profit of the public highways of the state is inconsistent with legislative control of the streets, and, therefore, legally impossible. The power of the state to control the streets is for the public benefit, and is, therefore, inalienable. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 484; *People ex rel. Bristol* v. *Supervisors*, 20 Mich. 95; *People* v. *Kerr*, 27 N. Y. 188; *Goszler* v. *Georgetown*, 6 Wheat. 593; *Town of East Hartford* v. *Hartford Bridge Co.*, 10 How. [U. S.] 511; *Clark* v. *Corp. of Washington*, 12 Wheat. 54.) Even if it were within the legislative power to create an indefeasible and perpetual street railway franchise in lower Broadway, it is not to be supposed, in the absence of such declaration, that such a franchise was intended. (*People* v. *Kerr*, 27 N. Y. 188.) The reserved right to repeal corporate charters, construed with respect to street railroad corporations, includes the power to abrogate or withdraw a franchise held by such corporations to use the public streets for private gain. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 644; *Tracy* v. *T. & B. R. R. Co.*, 38 N. Y. 433, 437; Dwarris on St. 690; *Santa Clara Case*, 118 U. S. 394; *Greenwood* v. *Freight Co.*, 105 id. 13; *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Chicago* v. *Iowa*, 94 id. 155; *Peik* v. *Chicago*, Id. 164; *Ruggles* v. *Illinois*, 108 id. 527; *Fanning* v. *Osborne*, 102 N. Y. 441.) Persons dealing with corporations, or purchasing their bonds in the markets, must take notice of the limitations upon their powers to issue the bonds, and are deemed to contract with reference to those limitations. (*Savings Bank Cases*, 84 N. Y. 403; *Cagwin* v. *Town of Hancock*, Id. 532; *Town of Lyons* v. *Chamberlain*, 89 id. 578; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574; *Craig* v. *Town of Andres*, 93 N. Y. 405; *Thompson* v. *Town of Mamakating*, 37 Hun, 400.) The power to mortgage, and through a mortgage to transfer a franchise, not being one inherently necessary to a corporation for the purpose of enabling it to carry out the

objects of its incorporation, the bare permission of the statute of 1850 to mortgage franchises (if, indeed such permission were ever available to a street railroad company) should not be amplified by construction, but should be strictly construed. (*Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Heckman* v. *Pinckney*, 81 N. Y, 211; *People* v. *Gold & Stock Co.*, 98 id. 67.) When the state withdrew the privilege of operating a railroad in Broadway from the corporation on which it was conferred, by annulling its charter, the same act terminated the right of any other corporation to use or enjoy the franchise under lease or contract from the Broadway company. (*People* v. *B. H. T. & W. R. R. Co.*, 12 Abb. N. C. 230; *Penn. R. R. Co.* v. *St. Louis R. R. Co.*, 118 U. S. 290; *Thomas* v. *R. R. Co.*, 101 id. 71; *Abbott* v. *J. G. & K. H. R. R. Co.*, 80 N. Y. 27; *Pierson* v. *McCurdy*, 33 Hun, 521, 522, 523; 100 N. Y. 608.) In no case could the city waive the objection that the contracts were illegal, nor lengthen the term of a franchise, the duration of which depended upon the legislative will. (*Peik* v. *Chicago*, 4 Otto, 164; *Chicago* v. *Iowa*, Id. 155; *N. O. Co.* v. *Delamore*, 114 U. S. 501; *Fanning* v. *Osborne*, 102 N. Y. 441; *East Ala. Co.* v. *Doe ex dem. Visscher*, 114 U. S. 341.) The leases were void in their inception for want of power to make them, in the lessor or lessees. (*T. & B. Co.* v. *B., H. T. & W. R. R. Co.*, 86 N. Y. 107; *Abbott* v. *Johnstown, etc., R. R. Co.*, 80 id. 27; *People* v. *A. & V. R. R. Co.*, 77 id. 232; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *Penn. Co.* v. *St. Louis Co.*, 118 id. 290; *Heckman* v. *Pinckney*, 81 N. Y. 211; *People* v. *G. S. T. Co.*, 98 id. 67; *Fisher* v. *R. R. Co.*, 46 id. 644; *Central Co.* v. *Twenty-third St. Co.*, 54 How. Pr. 168; *Woodruff* v. *Erie Co.*, 93 N. Y. 609; *Excelsior Co.* v. *Lacey*, 63 id. 422.) No corporation can absolve itself of its public uses; any act by which it undertakes to do so is unlawful and a violation of its charter. (*Thomas* v. *R. R. Co.*, 101 U. S. 71, 78.) An agreement to practically surrender the uses of a corporation to another is an attempt at unlawful consolidation. (*Pierson* v. *McCurdy*, 33 Hun, 521, 523; affirmed, 100 N. Y. 608.) Both

Statement of case.

the People and the receiver have a right in this action to raise the question as to the validity of the leases or traffic contracts. (*Gillett* v. *Moody*, 3 Coms. 479; *Talmadge* v. *Pell*, 3 Seld. 328; *Att'y-Gen'l* v. *Mutual L. Ins. Co.*, 77 N. Y. 272, 275; *Leavitt* v. *Palmer*. 3 Coms. 19; *Curtis* v. *Leavitt*, 15 N. Y. 43, 44, 45; Laws of 1858, chap. 314.) In construing a statute its title is a legitimate subject of consideration in determining the legislative intent. (*People ex rel. Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574; *Ayers* v. *Lawrence*, 59 id. 192–196; *People ex rel. Cook* v. *Wood*, 71 id. 371, 374.) Chapter 310 of the Laws of 1886 is a remedial statute; that is to say, one which affords a remedy; it provides for a new case. (1 Bl. Com., 86 Esp. Pen. Act 1.) Being a remedial statute, it is not subject to the general rule that statutes are to be construed as prospective in the absence of words expressly applying them to past cases. (*People ex rel. Collins* v. *Spicer*, 99 N. Y. 225–233; *People* v. *Supervisors*, 43 id. 130, 132; *Donaldson* v. *Wood*, 22 Wend. 395; 1 Bacon's Ab. Statutes, 5; *Smith* v. *People*, 47 N. Y. 330; *U. S.* v. *Freeman*, 3 How. 556; *People ex rel.* v. *Supervisors*, 70 N. Y. 228–236; *Brower* v. *Brower*, 1 Abb. Ct. App. Dec. 214; Potter's Dwarris [Postnote Case], 237.) The receiver and not the directors of the dissolved corporation is entitled to wind up the affairs of such corporation. (*Lathrop* v. *Stedman*, 13 Blatch. 134–150.)

*James C. Carter* and *Elihu Root* for the Broadway and Seventh Avenue Railroad Company, defendant. All the powers which corporations possess are substantial powers to take some part in the actual affairs of men, and are in the nature of grants to a pre-existing person created and defined by the powers first mentioned, and fitted to receive such grants. (*Dartmouth College* v. *Woodward*, 4 Wheat. 519, 680, 691.) The act creating the corporation, so far as it creates the abstract person, is a mere law and, so far as it bestows the substantial rights, is a grant. (*State* v. *Hayward*, 3 Rich. [S. C.] 389, 411.) The substantial rights of a corporate body being the subjects of grant to it, and being things which might be granted to

any natural person, are, in their nature, as capable of transmission by assignment as they were of original grant. (*Hall* v. *Sullivan Ry. Co.*, 21 Law Rep. 138.)   If the right is assignable, the legal title to it passes, upon the death or bankruptcy of the corporation, like all its other property, to such officers as the state may appoint to receive it; but the equitable and beneficial interest becomes vested (in the case of a stock corporation) in its creditors and stockholders. (*New Orleans R. R. Co.* v. *Delamore*, 114 U. S. 501.)   The substantial franchise bestowed was not a grant to the company personally alone, but was expressly made assignable. (Laws of 1850, chap. 40; Laws of 1854, chap. 282; Laws of 1873, chaps. 469, 710; Laws of 1874, chap. 430; Laws of 1876, chap. 446; Laws of 1880, chap. 113.)   An inseparable union of the franchise with the real estate and fixtures requisite for its enforcement stands at common law without the aid of any statute. (*Gue* v. *Tide Water Canal Co.*, 24 How. 257; *People* v. *Brooklyn, F. & C. I. R. R. Co.*, 89 N. Y. 75.)   The act of 1886 (Chap. 168), which assumes to annul and dissolve the Broadway Surface Company, had no other effect upon the franchise to construct and operate a railroad than to devolve it upon the representatives of that body for the benefit of its creditors and stockholders. (*Fletcher* v. *Peck*, 6 Cranch, 47, 135; Morawetz on Corp. §§ 660, 666; Angell & Ames on Corp. § 767; *People* v. *Oakland Co. Bk.*, 1 Doug. [Mich.] 286–288.)   Since the Revised Statutes, words of inheritance are not necessary to create an estate in perpetuity. (2 R. S., chap. 1, tit. 5, § 1.)   Even the ordinary presumption against the grantee in public grants is displayed in cases where, as here, the grant is for a valuable consideration. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129.)   The franchise still exists as property, and as the property of those beneficially interested in the corporation, and is applicable in the first instance to the discharge of liens upon it, next to the payment of general creditors, and the residue is distributable among stockholders. (General Railroad Act, Laws of 1850, chap. 140, §§ 28, 225; Laws of 1884, chap. 252, § 1; *Hall* v. *Sullivan R. R. Co.*, 21 Law Rep. 138; *Morgan* v. *Louisiana*, 93 U. S. 217, 223;

*New Orleans, etc., R. R. Co.* v. *Delamore*, 114 U. S. 501;
*Metz* v. *Railway Co.*, 58 N. Y. 61; *Adams* v. *B. H. & E.
R. R. Co.*, 4 Bank. R. 99; *E. B. F. R. R. Co.* v. *Hubbard*, 10
Allen, 459, note; *Sweat* v. *B. H. & E. R. R. Co.*, 5 Bank. R.
243; *R. R. Co.* v. *James*, 6 Wall. 740; *W. R. Bridge Co.* v.
*Shepherd*, 21 How. 112; *Memphis, etc., R. R. Co.* v. *Comm.*,
112 U. S. 629; *Greenwood* v. *Freight Co.*, 105 id. 13.) The
substantial franchise of the Broadway Surface Company was
gained after it became a corporation, and became vested in it
by a legitimate exercise of its previously acquired powers. It
was, consequently, property beyond the reach of any exercise
by the legislature of its reserved power. (*Comm.* v. *Essex Co.*,
13 Gray, 237–253; *Sinking Fund Cases*, 99 U. S. 700–720.)
This franchise having been acquired by contract cannot be
taken away or destroyed without impairing the obligation of
the contract. (U. S. Con., art. 1, § 10; *Fletcher* v. *Peck*,
6 Cranch, 47; *People* v. *Sturtevant*, 9 N. Y. 273; *Milhau* v.
*Sharp*, 27 id. 607; *City of Brooklyn* v. *B. C. R. R. Co.*,
47 id. 475.) All the obligations of the Broadway Surface
Railroad Company survive in the same manner precisely as its
rights survive, and its property and property rights survive in
the same condition in which they were at the time the act of
dissolution was passed, subject to the contracts or other trans-
actions theretofore had in respect thereto by the Broadway
Surface Company. (*Mumma* v. *Potomac Co.*, 8 Peters, 281;
*R. W. & O. R. R. Co.* v. *O. S. R. R. Co.*, 16 Hun,
445.) The traffic contracts were authorized by the act of 1839,
which was in full operation. (*People* v. *B. R. R. Co.*, 89
N. Y. 75, 86; *Woodruff* v. *Erie R. Co.*, 93 id. 616.) The
act of 1839 did not authorize any railroad lease. (*Abbot* v
*Johnson*, 80 N. Y. 27.)

*Albert Stickney* and *Nelson S. Spencer* for the Twenty-
third Street Railway Company and Jacob Sharp, defendants.
In passing on the validity of the repealing act, the court will
consider its purpose and its necessary effect. (*People ex rel.
Collins* v. *Spicer*, 99 N Y. 225, 233; *Hudson Iron Co.* v.

*Alger*, 54 id. 173, 175; *Platt* v. *Union Pacific R. R. Co.*, 99 U. S. 48, 59; *In re Jacobs*, 98 N. Y. 98, 110, 111; *People* v. *Supervisors of Columbia Co.*, 43 id. 130, 132.) Such an act for such a purpose is virtually a bill of pains and penalties, and as such is within the prohibition of the Constitution of the United States. (4 Bl. Com. 259; Cons. of U. S. art. 1, § 10; *Cummings* v. *State of Missouri*, 4 Wall. 237; *Ex parte Garland*, Id. 333; *Fletcher* v. *Peck*, 6 Cranch, 137.) Such an act is not an exercise of legislative power. (4 Bl. Com. 259; 1 Stephen's His. of Crim. Law. of Eng. 145 *et seq.*; 4 Stephen's Com. 298, 299.) Such an act is an attempt to deprive citizens of property "without due process of law." (*Taylor* v. *Porter*, 4 Hill, 140; *Powers* v. *Bergen*, 6 N. Y. 358; *Burch* v. *Newbury*, 10 id. 374; *Wynehamer* v. *People*, 13 id. 378; *Brevoort* v. *Grace*, 53 id. 245; *In re Jacobs*, 98 id. 98; *People* v. *Marx*, 99 id. 377.) As to this property of this corporation, and these corporators, it is, at least, matter of grave doubt whether the so-called right to "repeal" is any longer left in the legislature. (*In re Oliver Lee's Bk.* 21 N. Y. 9; *Miller* v. *N. Y. & E. R. R. Co.*, 21 Barb. 513; *Albany N. R. Co.* v. *Brownell*, 24 N. Y. 345; *Miller* v. *State*, 15 Wall. 478; *Holyoke Co.* v. *Lyman*, 15 id. 500, 519; *Sinking Fund Cases*, 99 U. S. 700, 718, 720, 739, 741–744, 747, 748, 757; *Hyatt* v. *McMahon*, 25 Barb. 457, 468; *Detroit* v. *Detroit & Howell Plankroad Co.*, 43 Mich. 140.) The winding-up act has no retrospective effect. (*Goillotel* v. *Mayor*, 87 N. Y. 441; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 id. 473, 477; *Hamilton* v. *Knick. L. Ins. Co.*, N. Y. D'ly Reg. Dec. 15, 1882; *Trist* v. *Cabenas*, 18 Abb. Pr. 143.) A court of equity has no inherent power of any kind over corporations, and especially has it no power to appoint a receiver of one of them. Such power as it possesses it derives in every instance from statute. (High on Receivers [2d ed.] §§ 288, 289; *Att'y-Gen.* v. *Utica Ins. Co.*, 2 Johns. Ch. 371; *Bangs* v. *McIntosh*, 23 Barb. 504.) The winding-up act cannot divest the title of the directors of the dissolved corporation as trustees. (*Luhrs* v. *Eimer*, 80 N. Y. 171, 180; *De Voe* v. *I. & O. R. R. Co.*,

5 Paige, 521; High on Receivers, § 112; *Baker* v. *Admr. of Backus*, 32 Ill. 79; *Gravestein's Appeal*, 49 Penn. St. 310; *Young* v. *Rollins*, 85 N. C. 485; *Stuart* v. *Palmer*, 74 N. Y. 183.) The operating contract made with the Twenty-third Street Railway Company is a valid and continuing claim. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Rider Raft Co.* v. *Roach*, 97 id. 378; *Kent* v. *Quicksilver Mining Co.*, 78 id. 159; *People ex rel. Twenty-third Street Co.* v. *Squire*, 53 N. Y. Supr. Ct. 536.) The act of 1839 has never been repealed, and has been held to confer the most extensive power upon railroad corporations in the use of their respective roads. (*Woodruff* v. *Erie R. Co.*, 93 N. Y. 609.) Repeals by implication are not favored. (*Hankins* v. *Mayor, etc.*, 64 N. Y. 18, 21; *People ex rel. Woods* v. *Crissey*, 91 id. 616, 629; *In re Curser*, 89 id. 401; *Mark* v. *State*, 97 id. 572, 578; *Mongeon* v. *People*, 55 id. 616; *People ex rel. Kingsland* v. *Palmer*, 52 id. 83, 88; *In re D. & H. C. Co.*, 69 id. 209; *People ex rel. Stiner* v. *Morrison*, 78 id. 84; *People* v. *Brooklyn F. & C. I. R. Co.*, 89 id. 75; *In re Gilbert Elevated Road*, 70 id. 361, 372.) Should the act of 1839, for any reason, be deemed not to confer the authority to make the contract in question, special authority is found for it in the act of 1873. (*H. B. & M. F. R. R. Co.* v. *Southern Boulevard Co.*, 41 Hun, 553; *McKenna* v. *Edmonstone*, 91 N. Y. 234; *People* v. *Quigg*, 59 id. 33, 88; *Van Denburgh* v. *Village of Greenbush*, 66 id. 1; *Whipple* v. *Christian*, 80 id. 523.) A contract of this character always survives the death of the corporation. It is only personal contracts which are terminated by death, whether of individuals or corporations. All others are open and subsisting contracts. (*People* v. *Nat. Trust Co.*, 82 N. Y. 283; *T. & B. R. R. Co.* v. *B. H. T. & W. R. R. Co.*, 86 id. 107; *Great Northern Railway Co.* v. *Manchester, etc., R. Co.*, 10 Eng. L. & Eq. 11; 2 Redf. on Rys. 372; *Columbus, P. & I. R. R. Co.* v. *I. & B. R. R. Co.*, 5 McLean, 450; *Wilson* v. *Furness R. Co.*, L. R., 9 Eq. 28; *Stover* v. *Gt. W. R. Co.*, 2 Y. & C. Ch. 48.)

SICKELS—VOL. LXVI. 3

*S. P. Nash* for bondholders, respondents, and *Lyman Rhoades* for mortgagee in trust respondent. The act "to annul and dissolve the Broadway Surface Railroad Company" is unconstitutional and void. (*Sinking Fund Cases*, 99 U. S. 700, 720, 721; 2 Kent's Com. 206, 207; Constitution of 1846, art. 8, § 1; *People* v. *Albertson*, 55 N. Y. 50.) The winding-up act (Laws of 1886, chap. 310) is void on several grounds: (1.) It makes the receiver a judicial officer to take all the evidence upon which the court is to allow or reject claims. (2.) It imposes on the court the duty of rejecting claims which might be open to contest. (3.) It requires bondholders, whose bonds may be deemed valid, to take a present payment in discharge of a long bond. (*Empire City Bank*, 18 N. Y. 199; *Fisk* v. *Jeff. Police Jury*, 116 U. S. 131.) The rights, privileges and consents dealt with by the "Consent" act were rights of property growing out of grants and contracts, and so protected by the Constitution. (*Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121; 2 Kent, 307, note *a;* Ang. & Ames on Corp. § 307; *Curran* v. *State of Arkansas*, 15 How. 304.) The alleged irregularities in the organization of the Broadway Surface Railroad Company have no relevancy to the questions now presented to the court, and furnished no ground for annulling its corporate existence by legislative act. (*Kent* v. *Quicksilver Co.*, 78 N. Y. 159; *Davidson* v. *Westch. Gaslight Co.*, 99 id. 558.) This case is governed by the doctrine, that where the corporate act is in its external aspect within the general powers of the company, and is only unauthorized because it is done with a secret unauthorized intent, this wrongful intent is no defense against a stranger who dealt with the company without notice of such intent. (*Ellsworth* v. *St. L., Alt. & T. H. R. R. Co.*, 98 N. Y. 553; *New Providence* v. *Halsey*, 117 U. S. 336.)

*Edward Winslow Paige* for Mr. Palmer, trustee, etc., respondent. By the contract made by the resolution of the common council of the 5th of December, 1884, and the various instruments of acceptance by the Broadway Surface Railroad

Company, a right for valuable consideration was granted to run passenger railroad cars perpetually upon Broadway. That right was a hereditament which is real estate and, of course, property. (*Mayor, etc* v. *Second Ave. R. R. Co.*, 32 N. Y. 261, 271, 273 ; *Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 Barb. 358, 364 ; *State* v. *Mayor, etc.*, 3 Duer, 119, 130–132, 145–151 ; *Davis* v. *Mayor, etc.*, 4 Kern. 506, 532 ; *People Sturtevant*, 5 Seld. 263, 273 ; *Milhau* v. *Sharp*, 27 N. Y. 611, 620–622 ; *Howlet* v. *Belden*, Gen'l Term, 4th Dept. ; *Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y. 330, 332 ; *New Orleans, etc., R. R. Co.* v. *Delamore*, 114 U. S. 501.) The instrument in question in this case is a grant of a right of way for a railroad, an incorporeal hereditament, *i. e.*, property. (*People* v. *Sturtevant*, 5 Seld. 263, 273 ; *Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y. 330, 332 ; *New Orleans, etc., R. R.* v. *Delamore*, 114 U. S. 501.) It could not be revoked nor in any way changed by the grantor, *i. e.*, the city. (*Mayor, etc.* v. *Second Ave. R. R. Co.*, 32 N. Y. 261, 271, 273 ; *Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 Barb. 358, 364 ; *Milhau* v. *Sharp*, 27 N. Y. 611, 622 ; *State* v. *Mayor, etc.*, 3 Duer, 119, 145, 151 ; *New Orleans, etc., R. R. Co.* v. *Delamore*, 114 U. S. 501.) Nor by the state, so far as the state was interested in the real estate granted. (*Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 45, 72 ; *Danolds* v. *State*, 89 N. Y. 36 ; *Fletcher* v. *Peck*, 6 Cranch, 87, 136–139.) The thing granted was not an interest personal merely to the Broadway Surface Railroad Company, but it was and is an interest assignable, like any other interest in real estate. *People* v. *Brooklyn, F. & C. I. R. Co.*, 89 N. Y. 75, 83, 84, 85, 90, 91 ; *Metz* v. *Buffalo, C. & P. R. R. Co.*, 58 id. 61 ; *New Orleans, etc., R. R. Co.* v. *Delamore*, 114 U. S. 501.) The grant being irrevocable by the grantor — not personal to the Broadway Surface Company — assignable, and containing no words of limitation, is perpetual. (*State* v. *Mayor, etc.*, 3 Duer, 119, 130, 131, 145–150 ; *Davis* v. *Mayor, etc.*, 14 N. Y. 506, 532 ; *People* v. *Sturtevant*, 9 id. 263, 273 ; *Milhau* v. *Sharp*, 27 id. 611, 620–622 ; *Brooklyn Cent. Co.*

v. *Brooklyn City Co.*, 32 Barb. 358, 364.)    By the provision
of the general street act (Chap. 252, Laws of 1884), put into
effect by the resolution of the common council of the 5th of
December, 1884, the various instruments of acceptance and
the order of the General Term, there was granted, for a valu-
able consideration, the franchise to perpetually use the right
of way upon the street Broadway for the operation of a rail-
road.    That franchise is property. (*Mayor, etc.* v. *Second
Ave. R. R. Co.*, 32 N. Y. 261, 271, 273 ; *Brooklyn Cent. R. R.
Co.* v. *Brooklyn City R. R. Co.*, 32 Barb. 358, 363 ; *Davis*
v. *Mayor, etc.*, 4 Kern, 506, 523, 524 ; *Milhau* v. *Sharp*, 27
N. Y. 611, 618, 620.)    The mortgages executed by the Broad-
way Surface Company were valid and effectual to bind all the
property of that company, including the right of way and the
franchise over the street Broadway.    (*Van Cott* v. *Van Brunt*,
82 N. Y. 535, 539–541.)    Sections 2 and 3 of chapter 271,
Laws of 1886, which provide for the resale of the right of way
and the franchise, for the benefit of the city of New York ;
and the provision in section 5 of chapter 310, Laws of 1886,
to the effect that no claim or demand "shall be allowed for
any greater amount than the money value of the consideration
therefor," are unconstitutional and void. (*Sinking Fund
Cases*, 99 U. S. 700 ; *Comm.* v. *Essex Co.*, 13 Gray, 239, 253 ;
*Albany Northern Co.* v. *Brownell*, 24 N. Y. 345, 350–353 ;
Chap. 140, Laws of 1850, § 28, sub. 10, as amended by chap.
133, Laws of 1880 ; Chap. 444, Laws of 1857, § 1 ; *New
Orleans, etc., R. R. Co.* v. *Delamore*, 114 U. S. 501, 510.)
The contracts made with the Broadway and Seventh Avenue
Company and the Twenty-third Street Company are valid and
still subsisting. (*People* v. *B. F. & R. R. Co.*, 89 N. Y. 75,
91 ; *Woodruff* v. *Erie R. Co.*, 93 id. 609 ; *Day* v. *Ogdens-
burg & L. C. R. R. Co.*, 13 N. E. Rep. 765 ; *Fisher* v. *N. Y.
C. & H. R. R. R. Co.*, 46 N. Y. 664.)    The act of 1884 deals
with "leases" and "transfers" only.    At the time of its
passage there was no law in New York authorizing the lease
of a railroad, and there is none now but this. (*T. & B. R.
R. Co.* v. *B., H. T. & W. R. Co.*, 86 N. Y. 107 ; *Chicago*

Statement of case.

R. R. Co. v. Iowa, 4 Otto, 155, 162 ; Day v. Town of New Lots, 13 N. E. Rep. 915, 918 ; Wright v. Delafield, 25 N. Y. 266 ; Neudecker v. Kohlberg, 81 id. 296, 301 ; Edmonstone v. McLoud, 16 id. 543.) There is no one here who is in a position to raise the question as to the validity of the contract. (Att'y-Gen. v. Reynolds, 1 Eq. Cas. Ab. 131 ; Att'y-Gen. v. Utica Ins. Co., 2 J. C. R. 370 ; Att'y-Gen'l v. Bank of Niagara, Hopk. 354 ; U. S. Trust Co. v. N. Y., W. S. & B. R. Co., 101 N. Y. 478, 483 ; Att'y-Gen. v. Tudor Ice Co., 104 Mass. 239 ; Bissell v. M. S. & N. I. R. R. Co., 22 N. Y. 258, 281 ; Whitney Arms Co. v. Barlow, 63 id. 62, 68–70 ; At. State Bk. v. Savery, 82 id. 291, 307 ; Woodruff v. Erie R. Co., 93 id. 609, 618, 619 ; Rider Life Raft Co. v. Roach, 97 id. 378, 381.) The tacit approval of the stockholders is equivalent to the vote and the filing of the certificate. (Kent v. Quicksilver Mining Co., 78 N. Y. 159 ; Zabriskie v. Cleveland, C. & C. R. R. Co., 23 How. 381, 396, 398 ; G. W. R. Co. v. Oxford, W. & W. R. Co., 3 De G., M. & G. 341 ; Greenpoint Sugar Co. v. Whiton, 69 N. Y. 328, 333 ; Rochester Savings Bk. v. Averell, 96 id. 467, 473, 475, 476 ; Veeder v. Mudgett, 95 id. 295, 310.) The agreements to pay the bonds are valid. (Curtis v. Leavitt, 15 N. Y. 9.) The death of the Broadway Surface Company has no effect upon the contracts. An artificial being can make a contract affecting its property, outlasting in time its own life, just as a human being can. (Nicoll v. N. Y. & E. R. R. Co., 12 N. Y. 121, 128.)

Thomas Allison for the Mayor, etc., respondent. The right to operate a railroad in any public street is a franchise which can be conferred only by the legislature. (Davis v. Mayor, etc., 14 N. Y. 506 ; People v. Kerr, 27 id. 188 ; Milhau v. Sharp, Id. 611, 619.) The agreements were leases within the meaning of section 15 of the act of 1884. (Langdon v. Mayor, etc., 93 N. Y. 129 ; Mayor, etc. v Broadway and Seventh Ave. R. R. Co., 97 id. 275 ; Burchfield v. Northern Cent. R. R. Co., 57 Barb. 582 ; Hunt v. Comstock, 15 Wend.

665; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *R. R. Co.* v. *R. R. Co.*, 81½ Penn. 104; *S. Car. R. R. Co.* v. *W. C. & A. R. R. Co.*, 7 S. C. 410; *Hall* v. *Brown*, 34 N. H. 495; *Com. Pilots* v. *Clark*, 33 N. Y. 251.) As to the case at bar the act of 1839 (Chap. 218), is repealed by the act of 1884. (*Heckman* v. *Pinckney*, 81 N. Y. 211.) The People of the state of New York have the right to raise the question whether or not a corporation is exercising a franchise without authority or in violation of law. (*People* v. *N. Y. & H. R. R. Co.*, 45 Barb. 73; *People* v. *Kerr*, 27 N. Y. 188; *Milhau* v. *Sharp*, Id. 611, 619; *Davis* v. *Mayor, etc.*, 14 id. 506.) The franchise to construct, maintain and operate a railroad on the route of this company was a charter right; the existence of a charter, of a grant from the legislature of this right or franchise was essential to its existence. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506, 523; *Milhau* v. *Sharp*, 17 id. 611, 619; *In re Thirty-fourth St. R. R. Co.*, 102 id. 343, 351.) No statute can override the constitutional prohibition against the grant of an irrepealable and indestructible charter. (*N. Y. Cable R. R. Co.* v. *Chambers St. R. R. Co.*, 40 Hun, 29.) The right to exercise the power to absolutely annul the franchise held by the Broadway Surface Company to construct, maintain and operate a railroad on its route is not in any way impaired by the existence of contracts made by that company. Nor is the existence of that power made doubtful or impaired by calling these franchises or rights property or contracts. (*Chicago* v. *Iowa*, 4 Otto, 155; *Peik* v. *Chicago*, 4 id. 164; 6 Bissell, 131; *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 id. 608; *Curran* v. *Arkansas*, 15 id. 305; *Hawthorn* v. *Calef*, 2 Wall. 10; *Tomlinson* v. *Jessup*, 15 id. 454; *Beer Co.* v. *Mass.*, 7 Otto, 25; *Ruggles* v. *Illinois*, 108 U. S. 527; *Railroad Commission Cases*, 116 U. S. 307; *Comm.* v. *Farmers' Bk.*, 21 Pick. 542; *Troy R. R. Co.* v. *Kerr*, 17 Barb. 603; *Suydam* v. *Moore*, 8 id. 358; *White* v. *Syracuse R. R. Co.*, 14 id. 560; *North. R. R. Co.* v. *Miller*, 10 id. 282; *Erie* v. *Casey*, 26 Penn. St. 301; *Penn. College Cases*, 13 Wall. 190; *McLaren* v. *Pennington*, 1 Paige, 101; *Greenwood* v. *Freight Co.*, 105 U. S.

17; *Mumma* v. *Potomac Co.*, 8 Peters, 281; *Worcester* v. *Worcester Co.*, 109 Mass. 103; *Railroad* v. *Georgia*, 98 U. S. 359; *R. R. Co.* v. *Maine*, 96 id. 499.) Broadway was never condemned by the exercise of the power of eminent domain, but the fee of that street is in the abutting owners on it, the street is merely one the user of which was dedicated by their predecessors in ownership. (*Knox* v. *Mayor, etc.*, 55 Barb. 404, 410, 411.) To have the effect of being personal and exclusive a consent must state expressly on its face that it is intended to be a consent only to the particular assignment or under-letting consented to. It is not sufficient that it, in terms, names only a particular assignment or sub-letting to a specifically named person. (*Dakin* v. *Williams*, 17 Wend. 447; 21 id. 457; *Siefke* v. *Koch*, 31 How. 383; *Murray* v. *Harway*, 56 N. Y. 337, 343.) The " consent act " cannot be held valid and constitutional to preserve the consent and order, but invalid and unconstitutional so far as it gives the benefit of the preservation thereof to the city. (*People* v. *Kenney*, 96 N. Y. 294, 302, 303; *People ex rel. City of Rochester* v. *Briggs*, 50 id. 553.)

*William C. Gulliver* for James A. Richmond and others, respondents. This action rests entirely on the alleged dissolution of the corporation by the repeal act. (*People* v. *O'Brien*, 103 N. Y. 657.) It can be prosecuted only for the purpose of enforcing a right of the People. (*People* v. *Alb. & Sus. R. R. Co.*, 57 N. Y. 161; *People* v. *Brooklyn, F. & C. I. R. R. Co.*, 89 id. 75, 93.) No arbitrary power of repeal exists in the legislature. ( *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369; *Wilkinson* v. *Leland*, 2 Pet. 627, 657; Code, §§ 1797–1813; Cooley on Const. Lim. 85–88, 91, 175, 391; Sedg. on Stat. Constr. [2d ed.] 16, 121, 132; *Kilbourne* v. *Thompson*, 103 U. S. 168, 190; *Dash* v. *Van Kleeck*, 7 Johns. 477, 502, 508; *Wynehamer* v. *People*, 13 N. Y. 378, 391; *People ex rel. McDonald* v. *Keeler*, 99 id. 463, 480; *Morrill* v. *Sherburne*, 1 N. H. 199, 204; *Sinking Fund Cases*, 99 U. S. 700, 721, 761; *Fletcher* v. *Peck*, 6 Cranch, 87, 136; *Ervine's Appeal,*

16 Penn. St. 256, 266 ; *Holden* v. *James*, 11 Mass. 396, 405 ; *Simonds* v. *Simonds*, 103 id. 572 ; *Lewis* v. *Webb*, 3 Me. 326, 336 ; *Cummings* v. *State of Missouri*, 4 Wall. 277, 323 ; *People* v. *Draper*, 15 N. Y. 532, 545 ; *State of Maryland* v. *Balt. & O. R. R. Co.*, 3 How. 534, 549, 551.) The legislative power of repeal does not include the power to inflict punishment by destroying a corporate life or otherwise. (*Kilbourne* v. *Thompson*, 103 U. S. 168, 182 ; U. S. Const., fourteenth amend. § 1 ; N. Y. Const., art. 1, § 6 ; U. S. Const., art. 1, § 10 ; Cooley on Const. Lim. 261 ; *Cummings* v. *State of Missouri*, 4 Wall. 277, 319, 320, 323, 325, 329 ; *Ex parte Garland*, 4 id. 333, 377, 380 ; *Drehman* v. *Stifle*, 8 Wall. 595, 601 ; *Santa Clara County* v. *S. P. R. R. Co.*, 118 U. S. 394, 396 ; *Yick Wo* v. *Hopkins*, Id. 356, 368.) It is not possible for the legislature, by reservations contained in its statutes, to exempt itself from the direct prohibitions of the Constitution, adopted not only for the protection of individuals, but also as important features of public policy. The legislature cannot do indirectly what it is forbidden to do directly. (*Cummings* v. *State*, 4 Wall. 277, 325, 329 ; *Ex parte Garland*, Id 333, 380 ; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50, 55, 57, 67 ; *In re Jacobs*, 98 id. 98 ; *People ex rel. Schenectady, etc.*, v. *Allen*, 42 id. 404, 412, 413 ; *Atkinson* v. *Marietta, etc., R. R. Co.*, 15 Ohio St. 21, 35 ; *Taylor* v. *Comrs. of Rose Co.*, 23 id. 22 ; *Barron* v. *Burnside*, 121 U. S. 186.) The repeal act is unconstitutional because it impairs the obligation of contracts. (*New Jersey* v. *Yard*, 95 U. S. 104, 113.) Under the Constitution of this state the Broadway Company could not be dissolved by a special act. (*Cummings* v. *State*, 4 Wall. 277, 325 ; *People ex rel. Schenectady, etc.*, v. *Allen*, 42 N. Y. 404, 413.) That which is within the intent of a constitutional prohibition, is as much within the prohibition as that which is within its letter. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50, 55, 57 ; *Kilbourne* v. *Thompson*, 103 U. S. 168 ; *In re Jacobs*, 98 N. Y. 98, 110 ; *McCracken* v. *Hayward*, 2 How. 608 ; *Edwards* v. *Kearzey*, 96 U. S. 595 ; *Austin* v. *Murray*, 16 Pick. 121, 126 ; *Watertown* v. *Mayo*, 109 Mass.

315, 319; *Slaughter House Cases*, 16 Wall. 36, 87; Cooley on Const. Lim. 487, 488.) The purpose and scope of article 8, section 1 of the New York Constitution is to put into practical application the principle of equality of rights. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455; 2 Hough's Amer. Const. 811–813.) The passage of chapter 252, Laws of 1884, is itself a declaration of the legislature and conclusive evidence that in its judgment the objects of the corporation could be attained under a general law. (N. Y. Const. art. 3, § 18, as amended November 3, 1874; *In re Thirty-fourth St. R. R. Co.*, 37 Hun, 442, 446; 102 N. Y. 343, 348; *State* v. *Cincinnati*, 20 Ohio State, 18, 36.) The theory that general purposes of public policy should be at the foundation of all grants of corporate powers involves the theory that similar principles should be the basis of their revocation. (Cooley on Const. Lim. 393; *Tomlinson* v. *Jessup*, 15 Wall. 454, 458; 99 U. S. 700, 749; *Providence Bk.* v. *Pitman*, 4 Peters, 514, 561; *People ex rel. Adsit* v. *Allen*, 42 N. Y. 378, 384.) A reservation of the alleged right of repeal sought to be exercised by the legislature in this case was not attempted to be reserved by its contract with the Broadway Surface Railroad Company. (*Greenwood* v. *Freight Co.*, 105 U. S. 13, 17.) The reservations of the power to repeal charters and annul or dissolve corporations, contained in the Revised Statutes and the general railroad law, do not make such special legislation valid. (*Reciprocity Bank*, 22 N. Y. 9, 14; *Humphrey* v. *Pegues*, 16 Wall. 244, 248.) The courts, in the construction of statutes, are guided by considerations of justice and of public policy. (*People ex rel. West. F. Ins. Co.* v. *Davenport*, 91 N. Y. 574, 585, 587; *Cochran* v. *Van Sur'ay*, 20 Wend. 365, 382; *In re Empire Bk.*, 19 N. Y. 199, 213, 214; *Dash* v. *Van Kleeck*, 7 Johns. 477, 495, 496; *Smith* v. *People*, 47 N. Y. 330, 336, 337; *In re Rochester Water Comrs.*, 66 id. 413; *People ex rel. Bolton* v. *Albertson*, 55 id. 50; *Pennington* v. *Coxe*, 2 Cranch, 33, 52; *People* v. *Utica Ins. Co.*, 15 Johns. 358, 381; *Oates* v. *Nat. Bk.*, 100 U. S. 239,

244.) The court will, if possible, so construe a statute that it shall be constitutional. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50, 56; *Bd. of Sup'rs. of Seneca* v. *Allen*, 99 id. 532, 538.) Reservations of power to repeal will not be broadly construed. (*New Jersey* v. *Yard*, 99 U. S. 104, 112, 113.) In construction, general provisions give way to special, and such as have received from the legislature a special consideration in their application to a particular case prevail in that case. (*McKenna* v. *Edmonstone*, 91 N. Y. 231; *In re Central Park*, 50 id. 83; *Vandenburg* v. *Vil. of Greenbush*, 60 id. 1; *Whipple* v. *Christian*, 80 id. 523; *Excelsior P. Co.* v. *Lacey*, 63 id. 422, 425.) The provisions of section 1 of the act of 1884, referring to the provisions of the Revised Statutes, give to them no additional binding force as to corporations formed under the act of 1884, since they are applicable to all corporations formed after their enactment, unless it is otherwise provided by the legislature. (1 R. S., chap. 18, tit. 3, § 2; *Bowen* v. *Lease*, 5 Hill, 221, 226; *Home for Friendless* v. *Rouse*, 8 Wall. 430, 438; *R. R. Co.* v. *Maine*, 96 U. S. 499, 510.) The arbitrary power claimed by the plaintiff to be reserved by the Revised Statutes and the general railroad act of 1850, and its exercise by the repeal act, are unconstitutional, because conflicting with the fourteenth amendment of the Constitution of the United States. (*Santa Clara County* v. *S. Pac. R. R. Co.*, 118 U. S. 394, 396; *Barbier* v. *Connolly*, 113 id. 27, 31; *Yick Wo* v. *Hopkins*, 118 id. 356, 367, 368.) Chapter 268 of the Laws of 1884 is constitutional, nevertheless the effect of that act is no other or greater than to repeal the franchise to be a corporation. (*New Jersey* v. *Yard*, 95 U. S. 104, 113; *State* v. *Minton*, 23 N. J. L. 529, 532; *Smith* v. *People*, 47 N. Y. 330, 337, 339, 340; *Chase* v. *Lord*, 77 id. 1; *In re Rochester Water Comrs.*, 66 id. 413.) The provisions allowing the mortgaging and leasing of the property and franchises created a contract not only between the state and the corporation, but also between the state and the bondholders and lessees. (*Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234, 246, 247; *Curran* v. *Arkansas*, 15 How. 305,

314, 316. *Hawthorne* v. *Caleb*, 2 Wall. 10, 22, 23; *Woodruff* v. *Trapnall*, 10 How. 190, 205, 206; *Co. of Scotland* v. *Thomas*, 94 U. S. 682, 693.) The fact that no corporation is in a position to receive these franchises at the moment of annulment of the franchise to be a corporation does not prevent their survival. (*People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 75; *N. O., etc., R. R. Co.* v. *Delamore*, 114 U. S. 501; *Metz* v. *Buffalo, etc., R. R. Co.*, 58 N. Y. 61.) The survival of such franchises and the title to them in the hands of individuals has been asserted in the courts of this state. The exercise of them by individuals as trustees, or as officers, of the court, is familiar. That such franchises are property is a familiar principle. (*West River Bridge Co.* v. *Dix*, 6 How. 507; *R., etc., R. R. Co.* v. *L. R. R. Co.*, 13 id. 71; *Sixth Avenue R. R. Co.* v. *Kerr*, 72 N. Y. 330, 332.) The assignability of such franchises is abundantly established. (*Metz* v. *B., C. & P. R. R. Co.*, 58 N. Y. 61; *People* v. *B., F. & C. I. R. R. Co.*, 89 id. 75; *N. O., etc., R. R. Co.* v. *Delamore*, 114 U. S. 501, 507–510; *Branch* v. *Jessup*, 106 id. 468, 478, 486; *Tomlinson* v. *Branch*, 15 Wall. 460, 464–466; *Atkinson* v. *M. & C. R. R. Co.*, 15 Ohio St. 21, 36; *Clark* v. *Barnard*, 108 U. S. 436, 449; *W. U. T. Co.* v. *U. P. R. Co.*, 3 Fed. Rep. 423, 425; *M. & L. R. R. Co.* v. *Dow*, 19 id. 388, 392; *Shepley* v. *Att. & St. L. R. R. Co.*, 55 Me. 395, 407; *K. & P. R. R. Co.* v. *P. & K. R. R. Co.*, 59 id. 9, 23; *Miller* v. *R. & W. R. R. Co.*, 36 Vt. 452, 488–494; *Bank of Middlebury* v. *Edgerton*, 30 id. 190; *R. R. Co.* v. *Co. of Hamblen*, 102 U. S. 273, 277; *Morgan* v *Louisiana*, 93 id. 217; *Trask* v. *Maguire*, 18 Wall. 391; *Chaffe* v. *Lideling*, 27 La. Ann. 607, 610; *Memphis R. R. Co.* v. *Comrs.*, 112 U. S. 609.) A distinction in the matter of assignability is made between the franchise to be a corporation, and the franchises to operate, etc., the railroad. (*M. R. R. Co.* v. *Comrs.*, 112 U. S. 609, 619; *Hall* v. *S. R. R. Co.*, 21 Law Rep. 138; *Tomlinson* v. *Branch*, 15 Wall. 460, 465, 509, 510; *N. O., etc., R. R. Co.* v. *Delamore*, 114 U. S. 501, 507, 508; *Atkinson* v. *M. & C. R. R. Co.*, 15 Ohio St. 21, 36; *Coe* v. *C. P. &*

*I. R. R. Co.*, 10 id. 373, 390 ; *Bank of Middlebury* v. *Edger-ton*, 30 Vt. 190 ; *Chaffe* v. *Lideling*, 27 La. Ann. 607, 610 ; *Branch* v. *Jessup*, 106 U. S. 468, 478 ; *Metz* v. *B. C. & P. R. R. Co.*, 58 N. Y. 61 ; *Morgan* v. *Louisiana*, 93 U. S. 217, 223 ; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 75, 84, 85 ; *Trustees of Vincennes Univ.* v. *Indiana*, 14 How. 268, 273.) The power to operate a railroad is not necessarily a corporate right. (*Hall* v. *S. R. R. Co.*, 21 L. R. 138 ; *M. R. R. Co.* v. *Comrs.*, 112 U. S. 609, 619 ; *N. O., etc., R. R. Co.* v. *Delamore*, 114 id. 501, 508 ; *Bk. of Middlebury* v. *Edgerton*, 30 Vt. 190 ; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 75, 84 ; *Metz* v. *B., etc., R. R. Co.*, 58 id. 61 ; *R. R. Co.* v. *Co. of Hamblen*, 102 U. S. 273, 277 ; *Morgan* v. *Louisiana*, 93 id. 217, 221 ; *M. & L. R. R. Co.* v. *Dow*, 19 Fed. Rep. 388 ; *Trask* v. *Maguire*, 10 Wall. 391, 405 ; *Chaffe* v. *Lideling*, 27 La. Ann. 607, 610 ; *Washington University* v. *Rouse*, 8 Wall. 439, 444 ; *D. R. R. Tax Case*, 18 id. 206, 226 ; *Erie R. Co.* v. *Penn.*, 21 id. 492, 499 ; *Prov. Bk.* v. *Pitnam*, 4 Pet. 514, 561 ; *Tucker* v. *Ferguson*, 22 Wall. 527, 575 ; *Bailey* v. *Maguire*, 22 id. 215, 226 ; *R. R. Co.* v. *Comrs.*, 103 U. S. 1, 3 ; *Atkinson* v. *Marrietta & Co.*, 15 Ohio St. 21, 26 ; *Branch* v. *Jessup*, 106 U. S. 468, 478, 486 ; *Coe* v. *C. P. & I. R. R. Co.*, 10 Ohio St. 373, 386 ; *Green* v. *Briggs*, 1 Curt. 311 ; *Curran* v. *State of Arkansas*, 15 How. 304 ; *Barings* v. *Dabney*, 19 Wall. 1 ; *U. P. R. R. Co.* v. *U. S.*, 99 U. S. 700 ; *Comm.* v. *Essex Co.*, 13 Gray, 239 ; *Greenwood* v. *Union Freight Co.*, 105 U. S. 13.) Chapter 271 of the Laws of 1886 is unconstitutional. (*Comm.* v. *Potts*, 79 Penn. St. 164 ; *In re N. Y. El. R. R. Co.*, 70 N. Y. 327, 346, 347.) The entire property of the Broadway company vested in the directors as trustees immediately upon the passage of the repeal act, if it was operative to dissolve the company. (1 R. S. 600, part 1, chap. 18, tit. 3, § 9 ; *Cent. City Savings Bk.* v. *Walker*, 66 N. Y. 424, 428 ; *Heath* v. *Barmore*, 50 id. 302, 305 ; *Fairchild* v. *Gwynne*, 14 Abb. Pr. 121, 124.) The receivership act cannot constitutionally apply to the case of the Broadway company. (Fourteenth amend., Const. of U. S.,

§ 1; N. Y. Const. art. 1, § 6; *Taylor* v. *Porter*, 4 Hill, 140; *Westervelt* v. *Glegg*, 12 N. Y. 202; *Wynehamer* v. *People*, 13 id. 378, 392; *Kilbourne* v. *Thompson*, 103 U. S. 168, 182; *McCracken* v. *Hayward*, 2 How. 608; *Curran* v. *State of Arkansas*, 15 id. 305, 319; *Edwards* v. *Kearzey*, 96 U. S. 595; *In re Empire Bank*, 19 N. Y. 199, 216; *Watson* v. *N. Y. C. R. R. Co.*, 47 id. 157.) The only power to change trustees is in the courts. (*Cochran* v. *Van Surlay*, 20 Wend. 365; *Powers* v. *Bergen*, 6 N. Y. 358; *Breevoort* v. *Grace*, 53 id. 245.)    The receivership act does not apply to the case of the Broadway company, because it applies only to those corporations which are dissolved after its passage. (Sedg. on Stat. Constr. [2d. ed.] 194, 205, 299, 302; *Powell* v. *Tuttle*, 3 N. Y. 396, 401; *Olmstead* v. *Elder*, 5 id. 144; *Benton* v. *Wickwire*, 54 id. 226, 228; *Johnson* v. *H. R. R. Co.*, 49 id. 455, 462.)    The language of the statute cannot be varied by reference to the title, nor to any other matters, so as to make it retroactive. (*Hadden* v. *Collector*, 5 Wall. 107, 110; Sedg. on Stat. Constr. [2d. ed.] 43, 45; *Mongeon* v. *People*, 55 N. Y. 613, 616; Cooley on Const. Lim. 370; *Moon* v. *Durden*, 2 Exch. 22; *Benton* v. *Wickwire*, 54 N. Y. 226, 228; *People ex rel. Peake* v. *Supervisors Col. Co.*, 43 id. 130, 134, 135; *Dash* v. *Van Vleeck*, 7 Johns. 477, 502–508.) The receivership act is itself unconstitutional, as it impairs the obligation of contracts and takes property without due process of law. (*McCracken* v. *Hayward*, 2 How. 608; *Curran* v. *State of Arkansas*, 15 id. 305, 319; *Edwards* v. *Kearzey*, 96 U. S. 595; *In re Empire Bank*, 19 N. Y. 199, 216; *Watson* v. *N. Y. C. R. R. Co.*, 47 id. 157; *Kilbourne* v. *Thompson*, 103 U. S. 168, 182; *City of London* v. *Wood*, 12 Mod. 669; Mass. Decl. of Rights, art. 29; *Hall* v. *Thayer*, 105 Mass. 219; *Lumsden* v. *Milwaukee*, 8 Wis. 485, 494; *Danolds* v. *State*, 89 N. Y. 36, 45, 46, 50; *Lathrop* v. *Stedman*, 13 Blatchf. 134, 143; *Wynehamer* v. *People*, 13 N. Y. 378, 487; *Allen* v. *Louisiana*, 103 U. S. 80, 84; *Warren* v. *Mayor of Charleston*, 2 Gray, 84, 89; *Taylor* v. *Comrs. of Ross Co.*, 23 Ohio St. 22, 34.)

RUGER, Ch. J.   It will not be unprofitable at the outset, to recall some of the prominent incidents attending the origin and operation of the Broadway Surface Railroad Company, for the purpose of obtaining a clearer view of the situation of the parties, and their relation to the subject of the action.

On May 13, 1884, that company filed articles of association and became incorporated as a street railroad company under the provisions of chapter 252 of the Laws of 1884, a general act passed to authorize the formation of such corporations, pursuant to the mode introduced by the amendment to the Constitution of 1874.   By such incorporation the company became an artificial being, endowed with capacity to acquire and hold such rights and property, both real and personal, as were necessary to enable it to transact the business for which it was created, and allowed to mortgage its franchises as security for loans made to it, but having no present authority to construct or operate a railroad upon the streets of any municipality. This right, under the Constitution, could be acquired only from the city authorities, and they could grant or refuse it at their pleasure.   The Constitution not only made the consent of the municipal authorities indispensable to the creation of such a right, but, by implication, conferred authority upon them to grant the consent, upon such terms and conditions as they chose to impose, and upon the corporation the right to acquire it by purchase.

The framers of the Constitution, evidently treating the privilege as a valuable one, which should be disposed of for the benefit of the municipality, to those who would pay the highest price for it, gave the municipal authorities the exclusive right to grant the privilege, which had theretofore been exercised by the legislature alone, and authorized its acquisition by contract from such municipality.. (*In Re Cable Co.*, 109 N. Y. 32; *Mayor, etc,* v. *T. & L. R. R, Co.*, 49 id. 657).   The subsequent legislation of the state confirms this view, for at times it has provided that such right might be sold at auction, and by chapters 65 and 642 of the Laws of 1886, makes it

obligatory upon the municipalities to dispose of such right by public auction to the highest bidder.

Previous to December 5, 1884, this company applied to the municipality of New York for authority to lay tracks and run cars over Broadway from the Battery to Fifteenth street, and on that day, by resolution of the common council, the consent of the city was given upon the terms and conditions prescribed in the resolution granting it, among which was the annual payment of a considerable sum of money to the municipality. It is conceded that the Broadway Surface Company duly accepted the grant, and fully complied with and performed all of the terms and conditions provided therein, to entitle it to acquire, construct and operate its road. We know, not only from contemporary history, but from cases which have already reached this court, that serious questions have arisen, with reference to the propriety of the means by which the corporators of the company obtained this consent from the municipal authorities, but they are not involved in this case and have no bearing upon the questions presented for discussion by the record. They were neither alleged in the complaint, supported by proof, or presented in the arguments of counsel. The company subsequently obtained the favorable report of a commission duly appointed by the Supreme Court in lieu of the consent of abutting property owners, and the order of the court confirming the action of the commissioners.

After its incorporation the Broadway Surface Company mortgaged its property and franchises as security for contemplated loans, and authorized its bonds to be put upon the market for sale to the public generally and they were largely purchased by investors, without notice of any defect in their origin or execution. It also made contracts with other street railroad companies owning, respectively, lines of road connecting with the contemplated line of the Broadway Surface Company and diverging therefrom to distant parts of the city, for the use of their several tracks by each other, for which it received a large present pecuniary consideration from each of said companies besides the exchange of mutual benefits and accommodations.

It is not disputed but that upon the entry of the order of confirmation, the Broadway Surface Railroad Company became vested with the right of constructing a railroad on Broadway, and running cars thereon, to as full an extent as it had power to acquire, or the state and city authorities had authority to grant.

In the spring of 1885 the company caused its track to be constructed over the route authorized, and from that time to the 4th day of May, 1886, when it was dissolved by an act of the legislature, in connection with other railroad companies, ran its cars over such road and the connecting lines.

On May 14, 1886, in an action between the People, as plaintiff, and James A. Richmond, the former president of the Broadway Surface Railroad Company, as sole defendant, upon the application of the attorney-general, one John O'Brien was appointed receiver of the property formerly belonging to the Broadway Surface Company, by a justice of the Supreme Court of the third judicial district, in an *ex parte* order based upon the summons and complaint in that action, in pursuance of and under the authority alone of the provisions of chapter 310 of the Laws of 1886.

The present action was a supplementary action brought July 8, 1886, by the attorney-general in the name of the People of the State against the city of New York, the receiver of the Broadway Surface Railroad Company, and numerous other corporations and persons, alleged to have had dealings with such company, either as stockholders, mortgagees, creditors or contractors, for the purpose of obtaining a judgment declaratory of the rights and liabilities of the several parties, as affected by the dissolution of the corporation, determining the fact as to what were assets of the company, and the extent of the interests of the several parties therein, and restraining the mortgagees, contractors and others from taking legal proceedings to enforce their rights in, and liens upon the property of the corporation.

It is not claimed that the state has any legal interest in the determination of these questions, or that the receiver has not

ample power at law to obtain possession of such assets as he may be entitled to, or to protect the property of the corporation from unlawful claims. It is claimed that the action is maintainable under the provisions of section 1 of chapter 310 of the Laws of 1886, by virtue of the provision making it the duty of the attorney-general, upon the dissolution of a corporation by legislative action, "immediately thereafter to bring a suit to wind up and finally settle and adjust the affairs of such annulled and dissolved corporation."

The complaint shows that previous to the commencement of this action the attorney-general had brought a suit, in accordance with the statute, to wind up the affairs of the corporation; that a receiver had been appointed therein, and that such action was still pending undetermined. It then proceeds to allege that in consequence of various enumerated difficulties in obtaining possession of the property by the receiver, this action was brought "in aid of the former action to prevent a multiplicity of suits and to carry out the provisions of chapter 310 of the Laws of 1886."

It is not easy to see on what theory such an action can be maintained. The state has no interest entitling it to intervene to prevent a multiplicity of actions between other parties. Neither does the action seem necessary or proper in aid of the former action.

The mode by which the provisions of chapter 310 are to be carried out are specially provided by that act, to be through the instrumentality of a receiver, and it is not claimed that the receiver lacked power to litigate and settle any of the questions presented by this complaint. The receiver might, perhaps, have brought an action similar in character to this, and would have had a legal interest, if any, in the property to be affected by it; but the state has no such interest and has no greater authority to intervene in the litigation of controversies between individuals and corporations than any other indifferent party. (*People* v. *Booth*, 32 N. Y. 397; *People* v. *Ingersoll*, 58 id. 13; *Matter of the N. Y. Elevated R. R.*,

70 id. 339; *People* v. *B., F. & C. I. R. R. Co.*, 89 id. 93; *People* v. *A. & S. R. R. Co.*, 57 id. 161.)

It is claimed that this court held in *People* v. *O'Brien* (103 N. Y., 657), that the action was maintainable. We think that claim is unfounded. The question was not involved in the motion there considered. That was a motion to change the place of trial of the action. Whether the complaint stated a good cause of action or not, could not have been properly considered or decided on such a motion.

This action is certainly unusual, and is believed to be unprecedented in its scope and design; and, if held to lie at all, presents a strong and unfavorable contrast to the mode in which legal controversies are usually brought to the attention of judicial tribunals. Some members of the court, however, are of the opinion that the right of the People to maintain the action depends wholly upon the question of the constitutionality of chapter 310 referred to and requiring the consideration of that question.

Considering, therefore, the magnitude of the interests affected and the importance to the public generally of a speedy determination of the questions, involving the right of operating a street railroad on Broadway, notwithstanding the dissolution of the corporation to which that right was originally granted, we refrain from disposing of the case upon the ground referred to, and proceed to an examination of the questions upon which such right depends.

Their determination involves an inquiry into the rights secured by the mortgagees and bondholders through the mortgages upon the property and franchises of the railroad company; the validity of the traffic contracts made by it with other street railroad corporations, and the effect which the legislation of 1886, comprised in chapters 268, 271 and 310 had upon such questions. In other words, we think the material question for discussion here is whether the franchise to maintain tracks and run cars on Broadway survived the dissolution of the corporation, and if so, upon whom the right of administering its affairs devolved.

Upon the trial of the action a judgment was rendered in favor of the defendants, except the receiver, to the effect that the mortgages were valid liens upon the property and franchises of the company and survived the dissolution of the corporation; that the traffic contracts were made by authority of law and could be enforced notwithstanding the dissolution of the corporation; and that chapter 271 and parts of chapter 310 of the Laws of 1886, were unconstitutional, as violative of the restrictions of the fundamental law in relation to legislation impairing the obligation of contracts, and constituting a taking of "property without due process of law."

The court also held that this action was maintainable in the name of the People; that a receiver of the property of the dissolved corporation had been lawfully appointed; that he was entitled to take possession of its property and wind up its affairs, and that the plaintiffs were entitled to a perpetual injunction restraining all of the defendants, except the receiver, from proceeding with actions already begun, or from instituting other proceedings or actions to enforce, maintain or assert any of the claims, demands or rights of action affecting in any manner the affairs, property, rights and privileges of the Broadway Surface Railroad Company which have been tried and determined in this action. Not only the plaintiff, but each of the defendants, except the Broadway and Seventh Avenue Railroad Company, appealed from this judgment to the General Term. That court affirmed the judgment of the trial court.

The plaintiff and all of the defendants, except the two railroad corporations, appeal from the judgment of affirmance to this court, and thus bring before us every determination involved in the judgment.

A review of the judgment brings up for consideration propositions very grave in character, not only on account of the extent of the private interests affected, but because their determination will affect great public questions arising out of

the limitations imposed by the Constitution upon the legislative power, over the property of corporations lawfully acquired.

The statutes upon which the action is predicated, confessedly assume the right and power of the legislature to wrest from the company its franchises; to transfer them to other persons, and bestow their value upon the donees of the state. The statutes contemplate the absolute destruction of the property of the corporation, and the loss of its value to the creditors who have made loans in good faith upon the security of such property, and this action is avowedly prosecuted to accomplish the purposes of the legislation. It is, therefore, urgently contended by the attorney-general that none of the franchises of the corporation survived its dissolution, and that the mortgages previously given thereon, as well as all contracts made with connecting street railroads for the mutual use of their respective roads, fell with the repeal and could not be enforced.

If it could be supposed for a moment, that this claim was reasonably supported by authority, or maintainable in logic or reason, it would give grave cause for alarm to all holders of corporate securities.

The contention that securities representing a large part of the world's wealth are beyond the reach of the protection which the Constitution gives to property, and are subject to the arbitrary will of successive legislatures, to sanction or destroy at their pleasure or discretion, is a proposition so repugnant to reason and justice as well as the traditions of the Anglo-Saxon race in respect to the security of rights of property, that there is little reason to suppose that it will ever receive the sanction of the judiciary, and we desire in unqualified terms to express our disapprobation of such a doctrine. Whatever might have been the intention of the legislature or even of the framers of our Constitution in respect to the effect of the power of repeal reserved in acts of incorporation, upon the property rights of a corporation,

such power must still be exercised in subjection to the provisions of the Federal Constitution.

Considering the power which the state has to terminate the life of corporations organized under its laws, and the authority which its attorney-general has by suit to forfeit its franchises for misuse or abuse and to regulate and restrain corporations in the exercise of their corporate powers, there is little danger to be apprehended in the future from the overgrowth of power, or the monopolistic tendencies of such organizations, but whatever that danger may be, it is trivial in comparison with the widespread loss and destruction, which would follow a judicial determination, that the property invested in corporate securities, was beyond the pale of the protection afforded by the fundamental law.

It is not perhaps strange, in the great variety of cases bearing upon the subject, and the manifold aspects in which questions relating to corporate rights and property have been presented to the courts that dicta, couched in general language, may be found giving color to the plaintiff's claim; but we think that there are no reported cases in which the judgment of the court has ever taken the franchises or property of a corporation from its stockholders and creditors, through the exercise of the reserved power of amendment and repeal, or transferred it to other persons or corporations, without provision made for compensation.

Among other claims made by the state, it is contended that the stated term of one thousand years prescribed in its charter, for the duration of the company, constitutes a limitation upon the estate granted, and that, therefore, the corporation took a qualified estate only in its franchises, and that the rights reserved by the Revised Statutes (Laws of 1884 and 1850), and the Constitution to alter, amend and repeal the charters or laws under which corporations might be organized, also constituted a limitation upon the estate granted, and that the exercise of the right of repeal by the state accomplished the destruction of the corporation and the annihilation of all franchises acquired under its charter.

It will be convenient in the first instance to consider the nature of the right acquired by the corporation under the grant of the common council, with respect to its terms or duration. This is to be determined by a consideration of the language of the grant and the extent of the interest which the grantor had authority to convey. We think this question has been decided by cases in this court, which are binding upon us as authority in favor of the perpetuity of such estates. That a corporation, although created for a limited period, may acquire title in fee to lands or property necessary for its use was decided in *Nicoll* v. *New York and Erie Railroad Company* (12 N. Y. 121), where it was held that a railroad corporation, although created for a limited period only, might acquire such title, and that where no limitation or restriction upon the right conveyed was contained in the grant, the grantee took all of the estate possessed by the grantor.

The title to streets in New York is vested in the city in trust for the People of the State, but under the Constitution and statutes it had authority to convey such title as was necessary for the purpose, to corporations desiring to acquire the same for use as a street railroad. The city had authority to limit the estate granted either as to the extent of its use or the time of its enjoyment, and also had power to grant an interest in its streets for a public use in perpetuity, which should be irrevocable. (*Yates* v. *Van De Bogert*, 56 N. Y. 526 ; *In re Cable Co.*, *supra*.)

Grants similar in all material respects to the one in question have heretofore been before the courts of this state for construction, and it has been quite uniformly held that they vest the grantee with an interest in the street in perpetuity, for the purposes of a street-railroad. (*People* v. *Sturtevant*, 9 N. Y. 263 ; *Davis* v. *Mayor, etc.*, 14 id. 506 ; *Milhau* v. *Sharp*, 27 id. 611 ; *Mayor, etc.*, v. *Second Ave. R. R. Co.*, 32 id. 261 ; *Sixth Ave. R. R. Co.* v. *Kerr*, 72 id. 330.)

Other cases are also reported in the books, but it is deemed unnecessary to accumulate authorities on this point.

In *Milhau* v. *Sharp*, Judge SELDEN said, with reference to a grant from the common council of New York in no material respect differing from this: "It amounted to an immediate grant of an interest, and it would seem of a freehold in the soil of the street to the defendants. The rails, when laid, would become a part of the real estate, and the exclusive right to maintain them perpetually is vested in the defendants, their successors and assigns. I say perpetually, because there is no limitation in point of time to the continuance of the franchise, and no direct power is reserved to the corporation to terminate it. * * * The title to the rails when permanently attached to the land, and such right in the land as may be requisite for their perpetual maintenance, are, therefore, granted to the defendants by the resolution."

Judge COMSTOCK, in *Davis* v. *Mayor*, *etc.*, said: " As the consideration for constructing the road the ordinance clearly contemplates that it is to become the private property of the associates. They alone will be entitled to place their cars upon it, and within a maximum limit they can charge what they please for the carriage of passengers. These rights are in effect granted in perpetuity."

In the case of *Mayor*, *etc.*, v. *Second Avenue Railroad Company* (32 N. Y. 272), it was said: " Assuming that the common council had power to make the grant, then its acceptance by Pearsall and his associates, signified by the execution of the agreement with the conditions annexed thereto, and the duties and obligations resulting therefrom, invested the latter with the right of property in the franchise which the common council could not take away or impair by any subsequent act of its own."

The resolution of the common council in this case expressly provided for traffic contracts by which the Broadway and Seventh Avenue Railroad Company should obtain a right to run cars over the tracks of the Broadway Surface Railroad, and no conditions upon the right granted to the Broadway Surface Railroad Company, in respect to the duration of such contract rights or otherwise, were imposed by the terms of the

grant. It was clearly contemplated by its provisions that the rights granted should be exercised in perpetuity, if public convenience required it, by that corporation, or those who might lawfully succeed to its rights.

When we consider the mode required by the statutes and the Constitution, to be pursued in disposing of this franchise, the inference as to its perpetuity seems to be irresistible, for it cannot be supposed that either the legislature or the framers of the Constitution intended to offer for public sale property the title to which was defeasible at the option of the vendor, or that such property could be made the subject of successive sales to different vendees, as often as popular caprice might require it to be done.

Neither can it be supposed that they contemplated the resumption of property, which they had expressly authorized their grantee to mortgage and otherwise dispose of, to the destruction of interests created therein by their consent.

We are, therefore, of the opinion that the Broadway Surface Railroad Company took an estate in perpetuity in Broadway through its grant from the city, under the authority of the Constitution and the act of the legislature. It is also well settled by authority in this state that such a right constitutes property within the usual and common signification of that word. (*Sixth Ave. R. R. Co.* v. *Kerr*, 72 N. Y. 330; *People* v. *Sturtevant*, 9 id. 263.)

When we consider the generality with which investments have been made in securities based upon corporate franchises throughout the whole country; the numerous laws adopted in the several states providing for their security and enjoyment, and the extent of litigation conducted in the various courts, state and federal, in which they have been upheld and enforced, there is no question, but that in the view of legislatures, courts and the public at large, certain corporate franchises have been uniformly regarded as indestructible by legislative authority, and as constituting property in the highest sense of the term.

It is, however, earnestly contended for the state that such a franchise is a mere license or privilege enjoyable during the life of the grantee only, and revocable at the will of the state. We believe this proposition to be not only repugnant to justice and reason, but contrary to the uniform course of authority in this country. The laws of this state have made such interests taxable, inheritable, alienable, subject to levy and sale under execution, to condemnation under the exercise of the right of eminent domain, and invested them with the attributes of property generally.

We will refer to a few only of the statutes on this subject from which the implication arises not only that the state intended to invest these franchises with the character of property, but also to enable their mortgagees, purchasers and assigns to enjoy their use under an indefeasible title. Thus railroad corporations have been authorized to contract with other corporations for a qualified transfer of such franchises for terms unlimited except by the agreement of the parties (Chap. 218, Laws of 1839; § 2, chap. 1843, Laws of 1872; § 15, chap. 252, Laws of 1884); to pledge them by way of mortgage as security for loans (sub. 10, § 28, Laws of 1850); to consolidate with other companies owning, connecting and continuous lines of railroad, and continue the use of such franchises under the name of their successors. (Chap. 108, Laws of 1875; *Shields v. Ohio*, 95 U. S. 319.) Mortgagees and others have been authorized to purchase such franchises upon mortgage sale and otherwise, and afforded the right to organize so as to enjoy their use thereafter. (§ 1, chap. 444, Laws of 1857; chaps. 469 and 710, Laws of 1873; chap. 113, Laws of 1880; chap. 430, Laws of 1874.) Purchasers upon a mortgage or execution sale have been authorized to form associations for the purpose of continuing the operation of such railroad with all its powers, privileges and franchises. (§ 1, chaps. 469 and 710, Laws of 1873; § 1, chap. 282, Laws of 1854.) The sale of such franchises has been authorized by the municipality where located to parties proposing to build street railroads.

(Constitutional amendment of 1875; § 7, chap. 252, Laws of 1884; chaps. 62 and 66, Laws of 1886.) And by section 15 of the act under which this corporation was organized, such companies were expressly permitted to lease or transfer their rights and franchises to other street railroad corporations. Indeed, it is matter of public history that one-half of the railroads of the state are now operated by organizations other than those to whom the franchises were originally granted, notwithstanding their dissolution, through transfers effected by the foreclosure of mortgages and otherwise.

The statutes cited, as well as others not specially referred to, indicate the general policy of the state to render such interests independent of the life of the original corporation and transferable as property by means of judicial proceedings and otherwise, under certain restrictions not pertinent to our present purpose particularly to consider. (*People* v. *Brooklyn F. & C. I. R. R. Co.*, 89 N. Y. 84.)

In *Mayor, etc.* v. *Second Avenue Railroad Company* (32 N. Y. 261), Judge BROWN said: "The rights of municipal corporations to property in lands and its usual incidents, and to create ferries and railroad franchises, are quite distinct and separate from their duties as legislatures, having authority to pass ordinances for the control and government of persons and interests within the city limits. The latter are powers held in trust, as all legislative powers are, to be used and exercised for the benefit and welfare of the whole community while the former are property, in the ordinary sense, to be acquired and conveyed in the same manner as natural persons acquire and transfer property."

The same learned judge said in *Brooklyn Central Railroad Company* v. *Brooklyn City Railroad Company* (32 Barb. 364): "The grant to the city railroad company and its acceptance on the conditions annexed, with the duties and obligations and large expenditures resulting therefrom, would seem, therefore, upon the principles I have endeavored to state, to invest the company with the right of property in the fran-

chise of which it cannot be deprived without its consent or against its will."

It was held by this court in *Langdon* v. *Mayor, etc.* (93 N. Y. 129), that a grant from the city of land to be used as a wharf, carried with it, as a necessary incident and appurtenance, a right of way for vessels over adjoining waters to the wharf, and that under such grants the property granted can only be resumed by the grantor when needed for public use by the exercise of the right of eminent domain.

The court also held in *People* v. *Brooklyn, Flatbush & Coney Island Railroad Company* (89 N. Y. 75), that upon a foreclosure of the property and franchises of a railroad corporation, an individual could lawfully become their purchaser, and could hold and transfer them to any corporation having or acquiring the right to exercise such franchises.

In *Sixth Avenue Railroad Company* v. *Kerr* (72 N. Y. 330), it was held that the right of a street railroad company in the use of a street for the purpose of its business, was a property right subject to condemnation for public use. As we have already seen, the cases of *People* v. *Sturtevant, Mayor, etc.,* v. *Sixth Avenue Railroad, Davis* v. *Mayor, etc.,* and *Milhau* v. *Sharp,* herein before referred to, sustain the same views.

The case of *N. O. S. F. & Lake R. R. Co.* v. *Delamore* (114 U. S. 501), is directly in point. There the franchise, as here, was acquired by the corporation from the municipal authorities of a city under general laws authorizing the formation of street railroad corporations. It was held, "where there has been a judicial sale of railroad property under a mortgage, authorized by law, covering its franchises, it is now well settled that the franchises necessary to the use and enjoyment of the railroad pass to the purchaser. * * * It follows that if the franchises of a railroad corporation, essential to the use of its road, and other tangible property, can by law be mortgaged to secure its debts, the surrender of its property upon the bankruptcy of the company carries the

franchises and they may be sold and pass to the purchaser at the bankruptcy sale."

In *Memphis and Louisville Railroud Company* v. *Railroad Commissioners* (112 U. S. 609, 619), it was said: "The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad and the property incident to it and the franchise of maintaining and operating it as a road."

These rights of property having been acquired and created under the express sanction and authority of the state, it remains to inquire whether they were defeasible and subject to be taken away through the exercise of any power reserved by the state to alter, amend and repeal laws or charters.

The reservations applying to this case are claimed to be as follows: 1st. Section 1, article 8, title " Corporations, how created" (Constitution of 1846) providing that, "all general laws and special acts passed pursuant to this section may be altered from time to time or repealed." 2d. Section 8, title 3, chapter 18 of the Revised Statutes (7th ed.), providing that "the charter of every corporation that shall be granted by the legislature, shall be subject to alteration, suspension and repeal in the discretion of the legislature." 3d. Section 48, chapter 140, Laws of 1850, providing that "the legislature may at any time annul or dissolve any incorporation formed under this act, *but such dissolution shall not take away or impair any remedy given against any such corporation, its stockholders, or officers for any liability which shall have been previously incurred.*" And 4th. Chapter 282, Laws of 1884, under which this corporation was organized, giving it all the powers and privileges granted, and subject to all of the liabilities imposed by chapter 140, Laws of 1850, and the several acts amendatory thereof, and further providing that "the legislature may at any time alter, amend or repeal this act." (§ 19.)

The Constitution of 1846 for the first time introduced restrictions upon the power of legislatures to grant special

charters, and required that provisions for corporations, save in exceptional cases, should thereafter be made by general laws. The obvious intent of the constitutional reservation was to remove any doubt as to the power of the legislature to amend or repeal the laws, whether general or special, authorized by that instrument for the formation of corporations, and seemed to leave the provisions of the Revised Statutes, in relation to reserved power over charters, in full force and effect.

It will be observed that the Constitution, and the act of 1884 provide specially for the amendment and repeal of statutes alone, but the Revised Statutes, and the act of 1850 are addressed specially to the subject of the annulment and repeal of charters created under such statutes.

It seems to us that these provisions relate to different subjects, viz.: The repeal of laws, and the annulment of charters formed under such laws, and that the power to do one, does not naturally or properly include the power to do the other. (*Albany Northern R. R. Co.* v. *Brownell*, 24 N. Y. 345.)

Certainly the repeal of a law authorizing corporations, would not destroy organizations formed under it, nor would the annulment of a charter affect the law under which it was created. Neither does it seem reasonable to suppose, while taking away the power of the legislature to create corporate bodies, the Constitution intended to confer power to destroy them, thus enabling them to accomplish indirectly, that which they were precluded from doing directly. It must be assumed that the framers of the Constitution, as well as the legislature, used the language employed by them intelligently and according to its common and customary signification, and when they spoke of the annulment and repeal of acts and laws alone, did not intend to embrace charters as well. These two subjects have frequently been the occasion of legislative action, and since the restrictions upon the powers of the legislature to grant special charters, there is no reason to suppose that they did not use the language employed in its literal sense, and especially so when both subjects, were immediately within the contemplation of the law makers.

In considering this question, the provisions of the Revised
Statutes may be laid out of view, for if they contain any
broader power than the act of 1850, they must be deemed to
have been repealed by the provisions of the latter act, as
inconsistent therewith. The reservations, therefore, which
apply to this case are contained in the acts of 1850 and 1884,
which constitute a part of the railroad charter.

These acts should be read and construed together, and, as
thus considered, provide that the legislature may at any time
alter, amend and repeal these acts, and may also annul and dis-
solve charters formed thereunder, but such dissolution shall
not take away or impair any remedy against such corporation,
its officers and trustees, for any liability previously incurred.
The contract proved between the corporation and the state
was intended, in respect to a repeal of the charter, to survive
the dissolution of the corporation, and to determine the rights
of parties interested in the property, in the event of dissolu-
tion. By virtue of this contract the corporation secured
rights subject to be taken away under certain restrictions, and
protected itself from any consequences following a repeal of
its charter, except those expressly agreed upon.

But even if it be conceded that the constitutional provisions
place the right to repeal charters, as well as laws, beyond the
power of legislatures to waive or destroy, the question still
remains as to the effect of such a repeal upon the franchises
of the corporation; whether it contemplates anything more
than the extinction of the corporate life, and consequent disa-
bility to continue business, and exercise corporate functions
after that time, or has a wider scope and effect.

It may be assumed in this discussion that the authority of
the legislature to repeal a charter, if it has expressed its inten-
tion to reserve such power in its grant, constitutes a valid
reservation. Parties to a contract may lawfully provide for
its termination at the election of either party, and it may,
therefore, be conceded that the state had authority to repeal
this charter, provided no rights of property were thereby
invaded or destroyed. In speaking of the franchises of a

corporation we shall assume that none are assignable except by the special authority of the legislature. We must also be understood as referring only to such franchises as are usually authorized to be transferred by statute, viz., those requiring for their enjoyment the use of corporeal property, such as railroad, canal, telegraph, gas, water, bridge and similar companies, and not to those which are in their nature purely incorporeal and inalienable, such as the right of corporate life, the exercise of banking, trading and insurance powers, and similar privileges. The franchises last referred to being personal in character and dependent upon the continued existence of the donee for their lawful exercise, necessarily expire with the extinction of corporate life, unless special provision is otherwise made. (*People* v. *B., F. & C. I. R. R. Co.,* 89 N. Y. 84; *People* v. *Metz,* 50 id. 61.)

In the former class it has been held that at common law real estate acquired for the use of a canal company could not be sold on execution against the corporation separate from its franchise, so as to destroy or impair the value of such franchise. (*Gue* v. *Tide Water Canal Co.,* 24 How. [U. S.] 257), and by parity of reasoning it must follow that the tracks of a railroad company, and the franchise of maintaining and operating its road in a public street, are equally inseparable, in the absence of express legislative authority providing for their severance.

The statute of our state authorizing the sale of the franchise and property of a railroad company on execution, seems to recognize the indissolubility of the connection between the corporeal property, and its incorporeal right of enjoyment.

It is also to be observed that in none of the provisions for repeal in this state is there anything contained, which purports to confer power to take away or destroy property or annul contracts, and the contention that the property of a dissolved corporation is forfeited, rests wholly upon what is claimed to be the necessary consequence of the extinction of corporate life. We do not think the dissolution of a corporation works any such effect. It would not naturally seem to

have any other operation upon its contracts or property rights than the death of a natural person upon his. (*Mumma* v. *Potomac Co.*, 8 Pet. 281, 285.)

The power to repeal the charter of a corporation cannot, upon any legal principle, include the power to repeal what is in its nature irrepealable, or to undo what has been lawfully done under power lawfully conferred. (*Butler* v. *Palmer*, 1 Hill, 335.)

The authorities seem to be uniform to the effect that a reservation of the right to repeal, enables a legislature to effect a destruction of the corporate life, and disable it from continuing its corporate business (*People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 N. Y. 569; *Philips* v. *Wickham*, 1 Paige, 590), and a reservation of the right to alter and amend confers power to pass all needful laws for the regulation and control of the domestic affairs of a corporation, freed from the restrictions imposed by the Federal Constitution upon legislation impairing the obligation of contracts. (*Munn* v. *Illinois*, 94 U. S. 113, 123.)

We think no well considered case has gone further than this, while in many cases such power has been expressly held to be limited to the effect stated. In the language of Chief Justice MARSHALL in *Fletcher* v. *Peck* (6 Cranch, 87, 135): "If an act be done under a law, a succeeding legislature cannot undo it. The past cannot be recalled by the most absolute power. Conveyances have been made; those conveyances have vested legal estates, and if those estates may be seized by the sovereign authority, still that they originally vested is a fact, and cannot cease to be a fact. When, then, a law is in the nature of a contract, when absolute rights have vested under that contract, a repeal of the law cannot divest those rights."

It would seem to be quite obvious that a power existing in the legislature by virtue of a reservation only, could not be made the foundation of an authority to do that which is expressly inhibited by the Constitution, or afford the basis of a claim to increase jurisdiction over the lives, liberty or prop-

erty of citizens beyond the scope of express constitutional power.

Since the decision of the celebrated *Trustees Dartmouth College* v. *Woodward* (4 Wheat. 518), the doctrine that a grant of corporate powers by the sovereign, to an association of individuals, for public use constitutes a contract, within the meaning of the Federal Constitution, prohibiting state legislatures from passing laws impairing its obligations, has, although sometimes criticised, been uniformly acquiesced in by the courts of the several states as the law of the land, and may be regarded as too firmly established to admit of question or dispute. (*People* v. *Sturtevant, supra; Milhau* v. *Sharp, supra; Brooklyn Cent. R. R. Co.* v. *Brooklyn City R. R. Co., supra.*)  The intimation, by Judge Story, in that case, that the rule might be otherwise if the legislature should reserve the power of amending or repealing it, led to the adoption by the legislatures of the various states, of the practice of incorporating such reservations in acts of incorporation.  Whatever may be the effect of such reservations, it is immaterial whether they are embraced in the act of incorporation or in general statutes or provisions of the Constitution.  In either case they operate upon the contract according to the language of the reservation.  (Morawetz on Corp. 464.)  It is manifest, therefore, that in the absence of such reserved power, legislatures have no authority to violate, destroy or impair chartered rights and privileges, or power over corporations, except such as they possess by virtue of their legislative authority over persons and property generally.  It is obvious that this reserved power does not, in any sense, constitute a condition of the grant, and cannot have effect as such, but is simply a power to put an end to the contract, with such effect upon the rights of the parties thereto as the law ascribes to it. (*Sinking Fund Cases,* 99 U. S. 700,748 ; *Tomlinson* v. *Jessup,* 15 Wall. 454, 457.)  In speaking of the exercise of this power by congress in the *Sinking Fund Cases,* Chief Justice Waite says: " Congress not only retains but has given special notice of its intention to retain full and complete

power to make such alterations and amendments of the charter as come within the just scope of the legislative power.  That, this power has a limit no one can doubt.  All agree that it cannot be used to take away property already acquired under the operation of the charter, or to deprive the corporation of the fruits actually reduced to possession of contracts lawfully made.  *  *  *  Whatever rules congress might have prescribed in the original charter for the government of the corporation in the administration of its affairs, it retained the power to establish by amendment.  In doing so it cannot undo what has already been done, and it cannot unmake contracts that have already been made, but it may provide for what shall be done in the future and may direct what preparation shall be made for the due performance of contracts already entered into.  It might originally have prohibited the borrowing of money on mortgage, or it might have said that no bonded debt should be created without ample provision by sinking fund to meet it at maturity.  Not having done so at first, it cannot now, by direct legislation, vacate mortgages already made under the powers originally granted, nor release debts already contracted."

The judges dissenting in that case contended that the reserved power could not be construed as authorizing the alteration, violation or nullification of any of the material provisions of the grant, but should be held to mean simply a reservation of the power to legislate, freed from the restrictions imposed by the constitutional provisions against legislation impairing the obligations of contracts.  Mr. Justice BRADLEY said : " The reserved power in question is simply that of legislation, to alter, amend or repeal a charter.  This is very different from the power to violate or to alter the terms of a contract at will.  A reservation of power to violate a contract, or alter it, or impair its obligation, would be repugnant to the contract itself and void.  A proviso repugnant to the granting part of a deed, or to the enacting part of a statute, is void.  Interpreted as a reservation of the right to legislate, the reserved power is sustainable on sound principles; but inter-

preted as the reservation of the right to violate an executed contract it is not sustainable."

This dissent proceeded upon the ground that the acts of congress under consideration changed some of the essential features of the contract, and were, therefore, void, as being obnoxious to the provisions of the Constitution for the protection of life, liberty and property. The majority of the court held, however, that such acts were simply an exercise of the power of congress to regulate the internal administration of the affairs of a corporation, which, to a certain extent, it was unanimously agreed that it possessed. There was no dispute or disagreement as to the correctness of the rule stated, that the power of amendment and repeal was a restricted power, limited by the provisions of the Constitution. An interpretation conferring the power of violating a contract at will upon one of its parties, under a clause authorizing its amendment or repeal, would seem to be inconsistent with any reasonable notion of the nature of such an instrument, and beyond the power of parties lawfully to create.

If it is possible to conceive the idea of a repealable grant, certainly such a grant, accompanied with power to convey or pledge the interest granted, must, on the execution of the power, necessarily preclude a resumption by the grantor of the subject of the grant, or any right of property acquired under it. An express reservation by the legislature of power to take away or destroy property lawfully acquired or created would necessarily violate the fundamental law, and it is equally clear that any legislation which authorizes such a result to be accomplished indirectly, would be equally ineffectual and void.

In *People* v. *National Trust Company* (82 N. Y. 287), the question was raised that a dissolved corporation was discharged from the obligation to pay rent accruing upon a lease subsequent to its dissolution. Judge RAPALLO said: "This claim is not founded upon the allegation of any payment, release or surrender, or anything affecting the merits of the claim, but upon the sole ground that by the dissolution of the corporation the lease was terminated and the covenant to pay

rent ceased to be obligatory. We do not regard the dissolution as having any such effect. Under the statutes of this state, on the dissolution of a corporation, its assets become a trust fund for the payment of its debts, and these include debts to mature as well as accrued indebtedness, and all engagements entered into by the corporation which have not been fully satisfied or canceled."

In *Commonwealth* v. *Essex Company* (13 Gray, 239), Justice SHAW said: "When, under power in a charter, rights have been acquired and become vested, no amendment or alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted." (*Albany R. R. Co.* v. *Brownell*, 24 N. Y. 345.)

The case of *City of Detroit* v. *Detroit and F. Plank-road Company* (43 Mich. 140), is not only in point, but entitled to high consideration on account of the distinction as a constitutional lawyer of the learned judge who wrote the opinion of the court. The question was whether the legislature had power to compel the defendant to remove its toll-gates from within the city limits after they had been lawfully placed there under the provisions of its charter. Judge COOLEY says: "It cannot be necessary at this day to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbitrary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since Magna Charta, and in this country always. It is immaterial in what way the property was lawfully acquired, whether by labor in the ordinary avocations of life, by gift, or descent, or by making a profitable use of a franchise granted by the state, it is enough that it has become private property, and it is thus protected by the 'law of the land.'"

And, finally, upon this branch of our subject, we are unable to see why section 48 of the law of 1850 does not express the rule by which the question under discussion must be determined. That section is expressly made a part of the

contract between the state and corporations organized there-
under, and specially provides for the effect which an exer-
cise of the reserved power of repeal by the state shall have
upon the franchises of the company.   It shall not impair any
remedy existing against the corporation, its directors or officers
upon a liability previously incurred. ᐧ This was the contract
under which the dissolved corporation issued its stock, mort-
gaged its franchises, entered into traffic engagements and
contracted debts.   Creditors, contractors and stockholders had
a right to rely upon the promise of the state, that the annul-
ment of the corporate charter, should not affect the remedies
existing in their favor against the corporation, and this prom-
ise is a contract protected by the provisions of the Federal
Constitution.

In the absence of any constitutional provision prescribing
the effect of such repeal, it was competent for the legislature
to declare what that should be, and for the state to contract
with reference to such a declaration.   The right of repeal, as
provided by the Constitution, is fully recognized by the act
of 1850, and the effect of the exercise of the power upon
the rights of parties affected thereby, is clearly defined.

We are, therefore, of opinion that the statute not only pre-
scribes the rule, creates the contract, and regulates the rights
of the parties upon the exercise by the state of the power of
repeal, but it also correctly formulates the principle of law
applicable to the situation.   We think it necessary to refer
only to some of the leading cases cited by the plaintiff's attorney
in support of his argument, and are of the opinion that they are
not controlling authorities upon the case under consideration.
That of *Greenwood* v. *Freight Company* (105 U. S. 13), was
an action by a stockholder in the Marginal Company against
the Freight Company and others, to obtain an injunction
restraining the latter company from taking possession of
the railroad tracks of the former after its dissolution by
legislative action, and running cars thereon.   The Marginal
Company had refused to assert its rights, and the stock-
holder was, therefore, allowed to bring his suit to protect his

interest in its property. Judge Miller says in that case: "Personal and real property acquired by the corporation during its lawful existence, rights of contract, or choses in action so acquired, and which do not in their nature depend upon the general powers conferred by the charter, are not destroyed by such a repeal, and the courts may, if the legislature does not provide some special remedy, enforce such rights by the means in their power. The rights of the shareholders of such a corporation to their interests in its property are not annihilated by such a repeal and there must remain in the courts the power to protect those rights." It was further held that, so far as the law then under consideration authorized one corporation to take and use the property or franchises of another, it was sustainable under the provisions requiring compensation to be made therefor, under the power of eminent domain.

Neither has the case of *People* v. *Globe M. L. Ins. Company* (91 N. Y. 174), any bearing upon the questions involved in this discussion. It was held in that case that contracts for personal services contemplated the continued existence of the parties, and when either of them died it necessarily effected a termination of such contracts.

So, too, cases depending upon the effect of conditions in a grant to the creation of corporate life or the acquisition of property rights thereunder are, for obvious reasons, foreign to the questions involved here.

Here the grantee has performed every condition essential to its creation as a corporate being and its capacity to acquire and hold property, and the only question is as to the effect of a power to extinguish the corporate life, reserved in its charter, upon its property rights.

In *Erie & N. E. Railroad Company* v. *Casey* (26 Penn. St. 287, 301), the question arose under a statute which specially provided that the state might resume all rights conferred in case of an abuse or misuse of the powers granted to the corporation. Upon an alleged abuse of power, the legislature repealed the charter and resumed the subject of the grant.

The corporation forfeited its rights by its voluntary act. The reservation in the charter was expressly made a condition subsequent. The case was between the representative of the state and the railroad corporation, and no rights of creditors, mortgagees or stockholders were involved in its decision. It also appears by the case that the state and the corporation had settled their controversy by compromise during the pendency of the litigation, and it can hardly be said to have involved any practical question.

We are, therefore, of the opinion that the Broadway Surface Company took an indefeasible title to the land necessary to enable it to construct and maintain a street railroad in Broadway, and to run cars thereon for the transportation of freight and passengers, which survived its dissolution.

We are thus brought to the question of the right of succession to the property of a dissolved corporation in the absence of any provision in the act of dissolution providing for such an event.

Sections 9 and 10, title 3, chapter 18, part 1 Revised Statutes (pp. 132, 153 [7th ed.]), seem to furnish a conclusive solution to the inquiry. They read as follows: "Sec. 9. Upon the dissolution of any corporation created or to be created, and unless other persons shall be appointed by the legislature, or by some court of competent authority, the directors or managers of the affairs of such corporation *at the time of its dissolution*, by whatever name they may be known in law, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of debts and other necessary expenses." "§ 10. The persons so constituted trustees, shall have authority to sue for and recover the debts and property of the dissolved corporation * * * and shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall come into their hands."

From these sections it would seem that upon the dissolution of this corporation, its remaining trustees became vested with the title of its property, and responsible to its creditors and stockholders for the value thereof. By operation of law a vested right of action accrued to all creditors and stockholders immediately on the dissolution against such trustees for the value of all property, which did or might by the exercise of reasonable diligence come into their hands. This was a liability which after it once attached was beyond the constitutional power of the legislature to release or discharge. (*Dash* v. *Vankleeck*, 7 Johns. 577.)

The evidence is undisputed that upon the dissolution, declared by the legislature, the trustees took possession of the railroad property and surrendered its operation to the mortgagees of such railroad. This, in the absence of any objection on the part of creditors or stockholders, they had undoubted authority to do, and the possession of such mortgagees thereafter was the possession of such trustees. They undoubtedly became liable for the value of such property to creditors and stockholders by virtue of such possession, and their authority to administer the assets of the corporation for the purpose of discharging such liability became fixed by the law existing at the time the liability was incurred. The cases in this state fully support these propositions. As was said by the chancellor in *Kain* v. *Bloodgood* (7 Johns. Ch. 90, 128): "The reasonable construction of the act is that the trustees succeeded to all the rights and privileges of directors and to the same means of defense."

In *McLaren* v. *Pennington* (1 Paige, 102), it was held, as stated in the head-note, that "where an act of incorporation is repealed, all the property and rights of the corporation become vested in the directors then in office, or in such persons as by law have the management of the business of the corporation, in trust for the stockholders and creditors, unless the repealing law provides for the appointment of other persons than the officers of the corporation as trustees."

In *Heath* v. *Barmore* (50 N. Y. 305), Judge RAPALLO

said: " Under the provisions of 1 Revised Laws, 248 and 1 Revised Statutes, 600, sections 9 and 10, upon the dissolution of a corporation, the directors or managers at that time become trustees of its property (unless some other custodian is appointed) for the purpose of paying the debts of the corporation and dividing its property among its stockholders, and these provisions apply as well to the real estate as to the personal property of corporations. Consequently, where lands are conveyed absolutely to a corporation having stockholders, no reversion or possibility of a reverter remains in the grantor."

ALLEN, J., in *Central City Savings Bank* v. *Walker* (66 N. Y. 428), speaking of the ownership of property and the property rights of a corporation, said: "During the life of the corporation the body corporate was the legal owner, and upon the expiration of the charter the legal title vested in the trustees in office, at the time, in trust, for the creditors and stockholders."

There can be no valid distiction between property held in trust and that owned by individuals in respect to the protection afforded to it by the Constitution. The reason for its protection is equally strong in either case, and the inviolability of the title is in both cases beyond the reach of legislative action. (*Trustees Dartmouth College* v. *Woodward, supra.*)

It then remains for us to consider the validity of the provisions of chapters 271 and 310 of the Laws of 1886. We are fully impressed with the importance of this question, and the well-settled principles of construction which require every statute to be so construed as to uphold its constitutionality, if that may be done by a fair and reasonable interpretation of its language.

Another rule, equally well settled, precludes courts from inquiring into the motives of legislatures in making laws, and to consider them simply with reference to their legal effect, upon the rights of persons subjected to their operation.

· If, however, upon such examination it is found that constitutional rights will be invaded by the operation of the

statute, it is the duty of courts to protect them by declaring the invalidity of the statute.

Upon such examination we are of the opinion that chapter 271 of the Laws of 1886 is unconstitutional and void. Its provisions show a naked and undisguised attempt to take away from the Broadway Surface Company and its stockholders and creditors, its property and bestow the benefit thereof upon the municipality of New York. The act attempts to preserve the validity of the consents held by the corporation notwithstanding its dissolution, and directs their sale and transfer to the purchaser, and the payment of the purchase-price to the city.

These consents were the muniments of title to the enjoyment of the rights acquired thereunder by the railroad corporation, and could not be lawfully retained in existence or transferred except by its consent, manifested in some of the ways provided by law. Their possession by any lawful transferee would entitle him to the exercise and use of the rights thereby conferred. The attempt to transfer them to a third party by the mere force of the statute, without the consent or knowledge of their lawful owners, was an effort to change their ownership without due process of law. (*Parker* v. *Browning*, 8 Paige, 388.)

Such legislation has been frequently and emphatically condemned. (*Taylor* v. *Porter*, 4 Hill, 147; *Wynehamer* v. *People*, 13 N. Y. 434; *Westervelt* v. *Gregg*, 12 id. 202; *Kilbourn* v. *Thompson*, 103 U. S. 168.)

In speaking of the reserved power to alter, amend and repeal laws authorizing incorporations, in *People* v. *Boston and Albany Railroad Company* (70 N. Y. 570), Judge Earl says: " Under this reserved power the legislature may impose upon railroad corporations such additional restrictions and burdens as the public good requires. It may not confiscate property, but it cannot be doubted that it may do all that is required by the act of 1874."

Judge Thompson said in *Dash* v. *Van Vleeck* (7 Johns. 477): " It is repugnant to the first principles of justice, and

the equal and permanent security of rights, to take by law the property of an individual without his consent and give it to another."

The main argument presented to maintain the constitutionality of this act, is the assertion that these consents do not constitute property within the usual signification of that term. We have considered that question and do not agree with the claim. In view of the fact that the statute expressly contemplates their sale, transfer and acquisition by a purchaser, it would seem unnecessary to go further to prove the fallacy of such a contention.

These remarks apply with equal force to chapter 310. The plaintiff has argued the case upon the assuption that the chapter referred to applies to the Broadway Surface Railroad Company, and should control the proceedings to wind up its affairs. That company was, however, dissolved on January fourth, and the act now under consideration was not passed until January eleventh thereafter and could not have retroactive effect unless its language expressly required it. We can see no ground for such a contention, unless we look beyond the language of the act and speculate as to the motives of the legislature in passing it. The act does not purport, in terms, to have a retroactive operation, and it is contrary to settled principles to give it such, unless there is something in the language of the act requiring this to be done.

Section 1 provides; "Whenever any corporation organized under the laws of this state shall be annulled and dissolved by an act of the legislature, it shall be the duty of the attorney-general * * * to bring a suit * * * to wind up the affairs of the corporation."

This language looks plainly to prospective cases arising under the act, and those only, and there is nothing in the body of the act to show that the legislature intended it to apply to a dissolution already accomplished.

The character of a statute is to be determined by its provisions, and not by its title (*People* v. *McCann*, 16 N. Y. 58), but when its language is ambiguous and doubtful, resort may

be had to its title and the occasion of its enactment, to explain an ambiguity in its terms. There is no ambiguity in the terms of this act, and nothing to indicate an intention to give it retroactive operation. The application of the act to the Broadway Surface Company can be sustained only upon the theory that such act applies to all corporations whatsoever, theretofore dissolved by legislative act, however remote in point of time such dissolution may have been effected. Whether there are such cases or not we are not informed, but we are invited to adopt a rule which would relate back and cover such cases if they exist.

We think such a decision would conflict with settled rules of construction. In *New York and Oswego Midland Railroad Company* v. *Van Horn* (57 N. Y. 473), it was held that a legislative intent to violate the Constitution will not be assumed, nor will a law be so construed as to give it a retroactive effect when it is capable of any other construction; and that if all of its language can be satisfied by giving it prospective operation only, that construction will be given to it.

In the case of *Dash* v. *Van Kleeck* (*supra*), it was decided that it is a principle of universal jurisprudence that laws, civil and criminal, must be prospective, and cannot have a retroactive effect; and in *Benton* v. *Wickwire* (54 N. Y. 229), the court declared that neither original statutes nor amendments can have any retroactive effect unless, in exceptional cases, the legislature so declare. (*People* v. *Supervisors*, 43 N. Y. 130; *People* v. *McCall*, 94 id. 587; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 id. 473.) The power of the legislature to give retroactive operation to a statute in some cases is conceded, but we believe that, to have such effect, it should declare its purpose in plain and unmistakable language, and that so unusual a signification should not be attributed to it by resorting to vague and equivocal inferences which have no support in the language employed. Such an interpretation would most emphatically be forbidden when it would interfere with vested rights. If we were at liberty to inquire into the circumstances under which this act was passed, and its connec-

tion with other legislation of the same period, we might con-
jecture that the legislature designed it to apply to the Broad-
way Surface Railroad Company; but it has not so expressed
itself in the act, and the rules of construction, to which we
have referred, forbid us from supplying the language neces-
sary to give it such effect. (*Benton* v. *Wickwire*, 54 N. Y.
226.) But, assuming that the act was intended to apply and
retroactive effect be given to it, we are of opinion that its
material provisions are open to many serious objections which
cannot be obviated or reconciled with the provisions of the
fundamental law.

A receiver is the representative of the debtor. It is his
duty to scrutinize the claims made against the estate and reject
and defend against those he believes to be unfounded or ille-
gal. He cannot be impartial in a litigation between himself
and creditors as to such claims. A law, therefore, which
makes such a party the referee to take the proof of claims,
and the judge to determine the materiality of evidence offered
in their support, violates a fundamental rule in the adminis-
tration of justice. No man can be a judge in his own case,
and it is immaterial whether he is a party in his own right or
as trustee of an express trust; in either event he is a party to
the action, interested therein and precluded from acting in a
judicial capacity in the determination of such a case. *Nemo
debet esse judex in propria causa.* This law is objectionable
also because it makes proof of the cost of the obligation the
measure of the creditor's recovery, instead of the liability of
the debtor as shown by the terms of his contract. And, again,
it requires the creditor to accept payment of an obligation
before maturity. The time of payment of a pecuniary obli-
gation is a material provision in such contract, and we know
of no authority to require a creditor to accept payment in
advance, any more than one to compel such payment by the
debtor. Each party has the right to stand on the letter of
his contract, and perform it according to its terms. But an
objection to this act, even more serious than those considered,
is found in the provision for the appointment of a receiver of

the property of the dissolved corporation, and the transfer of its assets to him by force of the statute, after the title thereto had become vested in its directors.

It will not be claimed that the appointment of such a receiver by the court in an action against a stranger, without notice to the trustees, in the absence of the authority conferred by chapter 310, would confer upon him title to property previously vested in others. (*Parker* v. *Browning, supra.*) We cannot see how this case differs from the one supposed. The only authority the court had for making the appointment was derived wholly from the provisions of this act and the court was not thereby invested with any judicial authority or discretion, except that of designating the holder of the title assumed to be transferred by the act. The court has, by virtue of its general jurisdiction over trusts, authority to appoint to a vacant trusteeship, and perhaps, for cause, to remove fraudulent, dishonest or incompetent trustees, and appoint others to perform the duties of the trust in order to avoid a failure thereof; but we know of no authority for a court to appoint a receiver of property vested in trustees, without cause and without notice to them, or opportunity afforded to defend their title and possession. As was said by Judge EARL in *Stuart* v. *Palmer* (74 N. Y. 184): " Due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights. A hearing and an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." And the chancellor had previously said in *Verplanck* v. *M. Insurance Company* (2 Pai. 450). "Another fatal objection to the regularity of these proceedings is that the appellants were deprived of the possession of their property without having an opportunity of being heard, and without any sufficient cause for such a summary proceeding. By the settled practice of the court in ordinary suits, a receiver cannot be appointed, *ex-parte*, before the defendant has had an opportunity to be heard in relation to his rights." (*Devoe* v. *Ithaca & O. R. R. Co.*, 5 Paige, 521;

*Ferguson* v. *Crawford*, 70 N. Y., 256.) As we have seen, the property of this corporation vested in the persons who were its directors at the time of its dissolution. They took it as trustees for stockholders and creditors, and were not made parties to the action in which the receiver was appointed. No legislation can authorize the appointment of a receiver of the property of A in an action against C, without violating the provisions of the Constitution in relation to the taking of property without due process of law. That the legislature might amend the provisions of the Revised Statutes in relation to the devolution of property of dissolved corporations is indisputable, and if it had done so in the act of dissolution, or previously, it would undoubtedly have prevented the vesting of the property in trustees; but this it did not do, and it had no authority, by mere force of legislative enactment, to take vested property from one individual or trustee and give it to another. (*McLean* v. *Pennington*, *supra*; *Trustees Dartmouth College* v. *Woodward*, *supra*.)

These conclusions must result in the condemnation of the scheme by which it was attempted to wind up the affairs of the Broadway Surface Railroad Company, as the provision for bringing an action by the attorney-general to wind up its affairs was incidental merely, and so intimately connected with the general plan of the scheme, that it cannot be supposed it would have been enacted except in connection with the other provisions of the act. We, therefore, think this law is obnoxious to the objection, that it assumes to take property without due process of law, and impairs the obligation of contracts. The questions as to the rights of the several parties under the traffic contracts are not before us in such form as to authorize us to pass definitely upon them; but we may properly, in this action, determine their validity so far as any objections are made to them by the plaintiff in this action. The plaintiff has not alleged any want of power on the part of the defendant corporations, to run cars over the Broadway Surface Railroad under their respective charters, and that question must be left until the attorney-general arraigns them in a

direct action for usurpation. (*People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 93 ; *Denike* v. *N. Y. & R. L. & C. Co.*, 80 id.599.)

It is claimed that the contract with the Broadway and Seventh Avenue Railroad is void because it is made with a company owning a parallel railroad. The trial court found that it was parallel to the Broadway Surface Railroad. Assuming, for the purposes of this decision, that this was a question of fact and not of law, and that we are bound by the finding, we do not conceive that fact to be conclusive on the question. The material ground upon which the contention is based is the proviso to section 15, chapter 252, Laws of 1884, authorizing companies organized thereunder to lease or transfer their rights to run upon or over any portion of their railroad tracks, to any other street surface railroad company authorized to run upon such route. The proviso is that the section should not be construed to authorize any of such companies " to lease its rights or franchises" to any other company owning and operating a road parallel thereto.

By these contracts the Broadway Surface Railroad acquired the right from the Broadway and Seventh Avenue Railroad, and from the Twenty-third Street Railroad Company, to run cars and make a continuous trip for a single fare, to the termination of their respective roads, over the tracks of such roads, and such roads, from their respective points of connection, were thereby respectively authorized to run cars over the Broadway Surface Railroad. That these rights were valuable and enured largely to the convenience and benefit of the traveling public is not now denied.

The uniform course of legislation in reference to street railroads, shows a policy on the part of the state to faciliate arrangements for the connection of continuous lines, and the transfer of passengers from one road to another, with the view of giving the longest service possible to the public without increase of fare. It can hardly be supposed that the legislature while expressly making provisions for such facilities intended to proscribe companies connecting with another road, which happened to own a line parallel for a certain portion of its

length, but which also owned other lines extending beyond the parallel portion, from the benefits to be derived from a traffic contract. It seems to us that the obvious intent of this provision was to avoid the monoply of parallel lines, and prevent the acquisition by one railroad company of the exclusive possession and control of such lines. It, therefore, prohibits leases to parallel roads. This does not and, in our judgment, was not intended to preclude such companies from making traffic contracts for the partial use of their respective routes, beyond the line of parallelism. These contracts were not in terms or in effect leases of such rights, and did not surrender possession or control of the road by its original owner. Such contracts were also authorized by chapter 218 of the Laws of 1839, and we do not consider that statute to have been repealed by the proviso of the act of 1884 or other legislation on the subject.

There are many other interesting and important questions presented by the briefs of the able counsel for the respective parties which it might be proper to discuss, were it not that the demands made by the claims of practical litigation, upon our time are so imperative as to forbid the consideration of abstract and speculative investigations. Such questions must be left to occasions when parties actually aggrieved present them in a litigation where their consideration is essential to the determination of rights. The views expressed lead to a denial of the relief sought in the action by the plaintiff.

The judgments of the Special and General Terms should be reversed and the complaint dismissed, with costs to the defendant other than the receiver.

All concur, except PECKHAM and GRAY, J. J., not sitting.

ANDREWS and EARL, JJ., concur in the result upon these grounds: (1.) The annulling act is constitutional and valid, and its effect was only to take the life of the corporation. (2.) All the property of the corporation, including its street franchises and its mortgages and valid contracts, including what are called the traffic contracts with other railway companies survived. (3.) The act chapter 271 is unconstitutional.

(4.) That act and the act chapter 310 are parts of the same scheme adopted by the legislature for the purpose of winding up the affairs of the corporation and disposing of and distributing its property. The main features of the latter act are unconstitutional and void, and thus so much of the legislative scheme has failed that there is not enough left to save the whole act from condemnation. (5.) As the latter act is thus wholly void, and this action is founded and depends solely upon it, there is no warrant for its maintenance; and, therefore, the judgment should be reversed and complaint dismissed.

All concur.

Judgment accordingly.